Gregory T. AMBUS, Plaintiff–Appellant,

v.

**GRANITE BOARD OF EDUCATION,**
Defendant–Appellee.

No. 91–4015.

United States Court of Appeals,
Tenth Circuit.

June 7, 1993.

Stephen W. Cook of Cook & Davis, Salt Lake City, UT, for plaintiff-appellant.

Brent A. Burnett, Asst. Atty. Gen. (R. Paul Van Dam, Atty. Gen., with him on the brief), Salt Lake City, UT, for defendant-appellee.

Before McKAY, Chief Judge, and LOGAN, SEYMOUR, MOORE, ANDERSON, TACHA, BALDOCK, BRORBY, EBEL, and KELLY, Circuit Judges.

LOGAN, Circuit Judge.

In *Ambus v. Granite Board of Education*, 975 F.2d 1555 (10th Cir.1992), this court reviewed a judgment in a 42 U.S.C. § 1983 suit by plaintiff Gregory T. Ambus, who was terminated from his position as a teacher in a Utah public school. Among other issues disposed of in the opinion, with the unanimous agreement of the active circuit judges this court overruled our earlier decision in *Harris v. Tooele County School District*, 471 F.2d 218 (10th Cir.1973), which held that Utah school districts were entitled to the state's Eleventh Amendment immunity. Because in analyzing the immunity issue the opinion relied in part upon a Utah statute that the panel erroneously thought was enacted after the *Harris* decision, and because of the importance of the issue, we granted en banc rehearing limited to the issue of the Eleventh Amendment immunity of Utah school districts. After considering the additional briefing and oral argument, we reaffirm our overruling of *Harris*.

I

In the absence of a waiver, the Eleventh Amendment forbids a suit for damages against a state in federal court. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). Although Congress did not abrogate state Eleventh Amendment immunity when enacting § 1983, *Quern v. Jordan*, 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979), that immunity extends only to the states themselves and to those governmental entities that are "arms of the state." *Meade v. Grubbs*, 841 F.2d 1512, 1525 (10th Cir.1988). Thus, unless Utah school districts are properly considered "arms of the state," they are amenable to suits for damages in federal court under § 1983. If the Eleventh Amendment

applies, it confers total immunity from suit, not merely a defense to liability. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, — U.S. —, —–—, 113 S.Ct. 684, 688–89, 121 L.Ed.2d 605 (1993).

The principal development since *Harris* affecting Eleventh Amendment jurisprudence in this area is the Supreme Court's decision in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), involving an Ohio school district board. There, the Court held that "[t]he answer [to a school board's entitlement to immunity] depends, at least in part, upon the nature of the entity created by state law." *Id.* at 280, 97 S.Ct. at 572. The Court ruled four factors to be relevant: (1) the characterization of the district under state law; (2) the guidance and control exercised by the state over the local school board; (3) the degree of state funding received by the district; and (4) the local board's ability to issue bonds and levy taxes on its own behalf. *Id.* The Court held that "[o]n balance, the record before us indicates that a local school board such as petitioner is more like a county or city than it is like an arm of the State." *Id.* Therefore, the school board was not entitled to Eleventh Amendment immunity. We must apply the *Mt. Healthy* analysis to the Utah school board's immunity claim.

We believe that the immunity issue must be determined in each case on the basis of the individual state laws involved. Since *Mt. Healthy* we have considered school districts' Eleventh Amendment immunity directly in two cases. We denied immunity to Kansas school districts, *Unified Sch. Dist. No. 480 v. Epperson*, 583 F.2d 1118 (10th Cir.1978), and granted it to New Mexico school districts, *Martinez v. Board of Educ.*, 748 F.2d 1393 (10th Cir.1984), based upon the particular facts of those cases. In *Bertot v. School District No. 1, Albany County, Wyo.*, 613 F.2d 245 (10th Cir.1979) (en banc), we noted that the issue of Wyoming school district immunity under the Eleventh Amendment was not directly implicated, but assumed that *Mt. Healthy* had resolved the issue against a finding of immunity. *See id.* at 248 n. 3.

Nearly all other courts considering the issue since *Mt. Healthy* have refused to grant local school districts Eleventh Amendment immunity. *See Lester H. ex rel. Octavia P. v. Gilhool*, 916 F.2d 865 (3d Cir.1990) (Pennsylvania school districts), *cert. denied*, —— U.S. ——, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991); *Stewart · v. Baldwin County Bd. of Educ.*, 908 F.2d 1499 (11th Cir.1990) (Alabama school boards); *Rosa R. v. Connelly*, 889 F.2d 435 (2d Cir.1989) (Connecticut school boards), *cert. denied*, 496 U.S. 941, 110 S.Ct. 3225, 110 L.Ed.2d 671 (1990); *Lopez v. Houston Indep. Sch. Dist.*, 817 F.2d 351 (5th Cir.1987) (Texas school districts); *Minton v. St. Bernard Parish Sch. Bd.*, 803 F.2d 129 (5th Cir.1986) (Louisiana school boards); *Fay v. South Colonie Cent. Sch. Dist.*, 802 F.2d 21 (2d Cir.1986) (New York school districts); *Gary A. v. New Trier High School Dist. No. 203*, 796 F.2d 940 (7th Cir. 1986) (Illinois school districts); *Travelers Indem. Co. v. School Bd.*, 666 F.2d 505 (11th Cir.) (Florida boards of education), *cert. denied*, 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982); *Eckerd v. Indian River Sch. Dist.*, 475 F.Supp. 1350 (D.Del.1979) (Delaware school boards). *But see Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248 (9th Cir. 1992) (granting Eleventh Amendment immunity to California school districts in light of near total authority exercised by state), *cert. denied*, —— U.S. ——, 113 S.Ct. 1280, 122 L.Ed.2d 674 (1993).

## II

### A

■ The first *Mt. Healthy* factor concerns the characterization of local school districts under state law. Plaintiff points to the Utah Constitution, which provides that counties are legal subdivisions of the state and that school districts are legal subdivisions of counties, Utah Const. art. XI, § 1, and to the Utah Governmental Immunity Act, which specifically defines a school district as a "political subdivision" for purposes of the Act, Utah Code Ann. § 63–30–2(7). The Board's response, that *Campbell v. Pack*, 15 Utah 2d 161, 389 P.2d 464, 465 (1964), and *Bingham v. Board of Education*, 118 Utah 582, 223 P.2d 432, 436 (1950), indicate that the Utah courts view school districts as arms of the state, is unpersuasive.[1]

Although Utah courts have consistently held that school districts are entitled to share in the state's sovereign immunity, *see Campbell*, 389 P.2d at 465, the extent of Eleventh Amendment immunity is a question of federal law. *Howlett v. Rose*, 496 U.S. 356, 376, 110 S.Ct. 2430, 2443, 110 L.Ed.2d 332 (1990). Even though state sovereign immunity protects Utah school districts from state-law suits, they may still be subject to federal causes of action, such as § 1983 suits. "To the extent that the [Utah] law of sovereign immunity reflects a substantive disagreement with the extent to which governmental entities should be held liable for their constitutional violations, that disagreement cannot override the dictates of federal law." *Id.* at 377–78, 110 S.Ct. at 2444. The explicit language of the Utah Constitution and the Governmental Immunity Act demonstrates that Utah school districts are political subdivisions of Utah for purposes of Eleventh Amendment analysis.

### B

■ The second *Mt. Healthy* factor concerns the degree of control exercised by the state over the local school boards. The Utah Constitution vests "general control and supervision of the public education system" in the State Board of Education. Utah Const. art. X, § 3. The Utah Legislature has defined "general control and supervision" to mean "directed to the whole system." Utah Code Ann. § 53A–1–401(1). The State Board "may not govern, manage, or operate school districts, institutions, and programs, unless granted that authority by statute." *Id.* § 53A–1–401(2). An examination of the Utah statutory scheme reveals that, although the State Board regulates many aspects of

1. The Board also contends that the Risk Management Act characterizes school districts as "state agencies." *See* Utah Code Ann. § 63–1–50(3). However, this represents nothing more than an administrative designation to assist the state Risk Manager, not a fundamental description of school districts.

the public school system, significant autonomy is vested in the local boards.

The State Board has the authority to establish rules and minimum standards regarding, *inter alia*, qualification and certification of teachers, graduation requirements, school accreditation, school building sites, school lunch programs, and student accounting requirements. *Id.* § 53A-1-402(1). Each of these responsibilities relates to the management of the school system in the state as a whole.

In contrast, local school boards exercise a myriad of responsibilities without control from the state level. *See id.* § 53A-3-402 (listing seventeen specific responsibilities of local boards). Local school boards are public corporations that "may sue and be sued, and may take, hold, lease, sell, and convey real and personal property as the interests of the schools may require." *Id.* § 53A-3-401(3). A school district is independent, free of control by either municipal or county governments, and has authority over all school property. *Id.* § 53A-2-108. Local board members are elected by voters in the precinct they represent. *Id.* § 53A-3-101. Local school boards do their own hiring, and may enter into employment contracts for as long as five years. *Id.* § 53A-3-411(1).[2]

The most persuasive synthesis of the role of the local school boards comes from the Utah Legislature itself: "Basic responsibility for operation of the public school system of this state has been delegated by the Legislature primarily to local school boards, subject to general control and supervision by the State Board of Education." *Id.* § 53A-21-102. This reading is in accord with our interpretation of the legislative scheme. We conclude that local school boards are not so controlled by the state as to be "arms of the state" under the second *Mt. Healthy* factor.

### C

■■■ The third and fourth *Mt. Healthy* factors are concerned primarily with whether a judgment against the school board would be paid out of the state treasury. That some public funds might be implicated is not dispositive for Eleventh Amendment purposes. Even though judgments against municipalities must invariably be paid from public funds, such suits are not barred by the Eleventh Amendment. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690 n. 54, 98 S.Ct. 2018, 2035 n. 54, 56 L.Ed.2d 611 (1978). Further, an entity's receipt of some state funding does not mean that damage awards must be considered to have been paid from the state treasury. *See Fay*, 802 F.2d at 27 ("Inferior government bodies do not share in Eleventh Amendment immunity simply because they receive state funds."). The proper analysis focuses on whether the damage award would be paid *directly* by the state treasury, rather than indirectly through commingled state and local funds or state indemnification provisions. *Cf. Griess v. Colorado*, 841 F.2d 1042, 1046 (10th Cir.1988) (The Eleventh Amendment is "concerned with claims for retroactive relief that *by their nature must* be paid from public funds, not actions directed against individuals that may ultimately be satisfied with state monies solely because the state has chosen to provide indemnification.").

Utah school districts receive revenue from local property taxes and state grants. By statute, local boards collect property taxes for debt service and capital outlay, Utah Code Ann. § 53A-16-104, and to help finance the basic school program, *id.* § 53A-17a-135. Local boards submit the tax rates to the county commissioners for collection, and the revenues are paid directly to the school district's business administrator. *Id.* § 53A-16-108. If the proceeds from the tax covering the basic program exceed the local district's computed need, the excess is remitted to the state for distribution to other districts. *Id.* § 53A-17a-135(3). The remainder of the local board's budget, 62.2% in Granite's case, comes from state grants.

■■■ The panel opinion relied upon Utah Code Ann. § 53A-16-111, which provides

---

2. The State Board does have the authority to take action against teachers exhibiting unprofessional or illegal conduct. Utah Code Ann. § 53A-6-301. However, that authority is premised upon the issuance of a teaching certificate by the State Board, not on any general control over local school districts.

that a local school board must levy a special tax if a judgment is obtained against the board. This statute's significance is diminished by the fact that the Granite school board participates in Utah's Risk Management Fund, which provides insurance against, *inter alia*, adverse monetary judgments. *Id.* § 63–1–47. As a participant, the school board assumes the responsibility to pay premiums into the Fund. *Id.* § 63–1–48. Because the state contributes to the Granite school district's budget, a substantial percentage of the premiums consists of state money. However, even if the state were to pay the entire premium, this would not confer Eleventh Amendment immunity on the local school districts. Voluntary assumption of monetary liability by the state does not transform the otherwise local entity into an "arm of the state." *See Griess*, 841 F.2d at 1047 ("[T]he assumption of an indemnification obligation on the part of the state does not confer a derivative constitutional immunity upon its indemnified employees."). Otherwise, every state by legislation could indemnify all local governmental entities without providing any funding, secure in the knowledge that the act of indemnification would itself confer Eleventh Amendment immunity, insuring that no payments of state funds would ever be required. In any event, the Utah Constitution prohibits the state from assuming a school district's debt, so the state could not directly pay judgments rendered against the district. Utah Const. art. XIV, § 6.

Any monetary damages awarded to plaintiff in this case would not come directly from the state treasury, but would be assessed against the school board, which would then seek indemnification from the Risk Management Fund. The local district is not funded directly from general state revenues, but rather through local property tax assessments supplemented by state grants. An award in plaintiff's favor would therefore not run solely against the state, and would not be barred by the Eleventh Amendment.

### III

■ Because Utah school districts are considered "political subdivisions" under Utah law, there is significant local board authority over school district operations, and Utah school districts obtain funding at least in part through locally administered property taxes, we conclude that they are not arms of the state for purposes of the Eleventh Amendment. Therefore they are not entitled to immunity from § 1983 suits in federal court. *Harris v. Tooele County Sch. Dist.*, 471 F.2d 218 (10th Cir.1973), is overruled.

The panel opinion reported at 975 F.2d 1555 is affirmed as modified by this opinion. The decision of the district court is REVERSED, and the cause REMANDED for further proceedings consistent herewith.