**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 20 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BONNIE DUKE,

        Plaintiff - Appellant,

  v.

GRADY MUNICIPAL SCHOOLS;
GRADY SCHOOL BOARD; GEORGE
YORK, Superintendent of the Grady
Municipal Schools; PAT WOODS,
JERRY POWELL, ALAN SUMRALL,
PHIL BERRY, BRENT
ARMSTRONG, Individually and in
their official capacities as Members of
the Grady Municipal School Board,

        Defendants - Appellees.

- - - - - - - - - - - - - - - - - - - - - - - -

NEW MEXICO TRIAL LAWYERS
ASSOCIATION, NEW MEXICO
SCHOOL BOARDS ASSOCIATION,

        Amici Curiae.

No. 96-2135

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CIV-94-1075-MV)**

Warren F. Frost, Warren F. Frost, P.C., Clovis, New Mexico, for Appellant.

David F. Richards, Van Soelen, Greig & Richards, P.A., Clovis, New Mexico, for
Defendants - Appellees.

Michael B. Browde, Albuquerque, New Mexico; William H. Carpenter, Carpenter & Chavez, Albuquerque, New Mexico; and Valerie A. Chang, Pasternack & Blake, P.C., Albuquerque, New Mexico, on the brief for Amicus Curiae New Mexico Trial Lawyers Association.

Robert D. Castille, Simons, Cuddy & Friedman, LLP, Santa Fe, New Mexico, on the brief for Amicus Curiae New Mexico School Boards Association.

---

Before **PORFILIO, ANDERSON,** and **BALDOCK**, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

This is an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), from an order of the district court in New Mexico, dismissing the 42 U.S.C. § 1983 claims of plaintiff, Bonnie Duke, against the Grady Public Schools, the Grady School Board, and the individual school board members in their official capacities.[1] The sole issue presented in this appeal is whether local school boards and districts in New Mexico are arms of the state and therefore entitled to Eleventh Amendment immunity, or whether they are political subdivisions or some other form of local

---

[1]Under § 1292(b), an order not otherwise appealable may be immediately appealed if the district court judge "shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The district court issued an order expressing that opinion, which we affirmed in an unpublished order declaring that an immediate appeal was authorized. Duke v. Grady Mun. Schs., No. 96-503, No. 96-2011, 1996 WL 249494 (10th Cir. May 13, 1996).

entity subject to liability under § 1983. We hold that local school boards and districts in New Mexico are not arms of the state and are therefore not entitled to Eleventh Amendment immunity. We therefore reverse and remand.[2]

## BACKGROUND

Ms. Duke commenced this § 1983 action against the members of the Grady School Board in their individual capacities, alleging that they had deprived her of a protectable property interest in her employment without due process of law. While her action was pending in the district court, the New Mexico Supreme Court issued its decision in <u>Daddow v. Carlsbad Mun. Sch. Dist.</u>, 898 P.2d 1235 (N.M. 1995), <u>cert. denied</u>, 116 S. Ct. 753 (1996). <u>Daddow</u> held that a local school board is not an arm of the state entitled to Eleventh Amendment immunity and that such a board is a "person" under 42 U.S.C. § 1983. <u>Id.</u> at 1241-44. This decision directly conflicts with our decision in <u>Martinez v. Board of Educ.</u>, 748 F.2d 1393 (10th Cir. 1984), in which we held that school boards in New Mexico are arms of the state and as such are entitled to Eleventh Amendment immunity. <u>Id.</u> at 1396. <u>Martinez</u> has been followed in published and unpublished decisions.

---

[2]Under New Mexico law, school districts are geographical areas designated as political subdivisions, and school boards are their governing bodies. <u>See</u> N.M. Stat. Ann. §§ 22-1-2(K),(L). As both are defendants in this appeal, we refer to them interchangeably throughout this opinion, as, in fact, do both the New Mexico code and caselaw.

See, e.g., Gonzales v. Mountainaire Pub. Schs., No. 93-2297, 1994 WL 599514 (10th Cir. Oct. 31, 1994); Garcia v. Board of Educ., 777 F.2d 1403, 1407 (10th Cir. 1985); Maestas v. Board of Educ., 749 F.2d 591, 592 (10th Cir. 1984).

With the district court's permission, Ms. Duke, relying on Daddow, thereafter amended her complaint to include the school district, the school board and the individual defendants in their official capacities as school board members. The defendants, in their official capacities, relying on Martinez, filed a motion to dismiss Ms. Duke's complaint. Recognizing the conflict between Daddow and Martinez, the district court felt obligated to follow Martinez, and therefore entered an order dismissing Ms. Duke's amended complaint naming the school district, the school board and its members in their official capacities. This interlocutory appeal from that order followed, in which Ms. Duke asks us to overrule Martinez and hold, as did the New Mexico Supreme Court in Daddow, that local school boards and districts are not arms of the state shielded from § 1983 liability in their official capacities by the Eleventh Amendment.

## DISCUSSION

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by

-4-

Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It thus "largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals." Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 39 (1994). Eleventh Amendment immunity, however, "extends only to the states and governmental entities that are 'arms of the state.'" Watson v. University of Utah Med. Ctr., 75 F.3d 569, 574 (10th Cir. 1996) (quoting Ambus v. Granite Bd. of Educ., 995 F.2d 992, 994 (10th Cir. 1993) (en banc)).

We described in Watson the inquiry necessary to determine whether an entity is an arm of the state:

> [W]e engage in two general inquiries. "[T]he court first examines the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state. Second, the court examines the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing." "The governmental entity is immune from suit if the money judgment sought is to be satisfied out of the state treasury."

Watson, 75 F.3d at 574-75 (citation omitted) (quoting Haldeman v. Wyo. Farm Loan Bd., 32 F.3d 469, 473 (10th Cir. 1994)); see also Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977); Ambus, 995 F.2d at 994.[3]

---

[3]We have referred in other cases to the four factors the Supreme Court held in Mount Healthy were relevant to determining whether a local school district was an arm of the state: "(1) the characterization of the district under state law; (2) the guidance and

(continued...)

The Supreme Court has indicated more recently that "the vulnerability of the State's purse [i]s the most salient factor in Eleventh Amendment determinations." Hess, 513 U.S. at 48; see also Regents of the Univ. of Calif. v. Doe, 117 S. Ct. 900, 904 (1997); Sonnenfeld, 100 F.3d at 749.[4]

---

[3](...continued) control exercised by the state over the local school board; (3) the degree of state funding received by the district; and (4) the local board's ability to issue bonds and levy taxes on its own behalf." Ambus, 995 F.2d at 994; see also Sonnenfeld v. City and County of Denver, 100 F.3d 744, 749 (10th Cir. 1996), cert. denied, 117 S. Ct. 1819 (1997). As we explained in Haldeman and Watson, the first two factors reflect the degree of autonomy of the particular entity, and the second two factors examine the source from which the entity receives its funds, and, in particular, whether a money judgment against the entity would be satisfied out of the state treasury.

[4]Some other circuits have analyzed more critically the manner in which courts, after Hess, should apply the factors relevant to determining whether an entity is an arm of the state. See, e.g., Harter v. Vernon, 101 F.3d 334, 339-40 (4th Cir. 1996) (holding that if the court finds the state treasury will pay the judgment, the entity is immune, but if it finds the treasury will not, then other factors should be considered), cert. denied, 117 S. Ct. 2511 (1997); Mancuso v. New York State Thruway Auth., 86 F.3d 289, 293 (2d Cir.) (applying six factor test, and concluding that "[o]nly if those factors point in different directions" does the court consider whether the state's integrity or treasury are affected), cert. denied, 117 S. Ct. 481 (1996); Hadley v. North Ark. Community Technical College, 76 F.3d 1437, 1442 (8th Cir. 1996) (examining state law characterization, degree of autonomy and "most importantly" source of operating funds), cert. denied, 117 S. Ct. 1080 (1997); Christy v. Pennsylvania Turnpike Comm'n, 54 F.3d 1140, 1150 (3d Cir.) (applying three factors and then considering them "in their totality"), cert. denied, 116 S. Ct. 340 (1995). Other courts have simply pointed out the difficulties and uncertainties in trying to apply the Eleventh Amendment analysis, particularly after Hess. See, e.g., Gray v. Laws, 51 F.3d 426, 433 (4th Cir. 1995); see also Alex E. Rogers, Note, Clothing State Governmental Entities with Sovereign Immunity: Disarray in the Eleventh Amendment Arm-of-the-State Doctrine, 92 Colum. L. Rev. 1243 (1992) (discussing confusion prior to Hess).

Whether a local entity is an arm of the state under the Eleventh Amendment "is a question of federal law." Doe, 117 S. Ct. at 904 n.5; see Howlett v. Rose, 496 U.S. 356, 376 (1990); Ambus, 995 F.2d at 995. However, "that federal question can be answered only after considering the provisions of state law that define the agency's character." Doe, 117 S. Ct. at 904 n.5. And while we have noted that most courts considering the issue since Mount Healthy have held that local school districts or boards are not entitled to Eleventh Amendment immunity, the question must nonetheless "be determined in each case on the basis of the individual state laws involved." Ambus, 995 F.2d at 994.

### A. Martinez Decision

In Martinez, we held that "New Mexico from the outset has taken an extreme position on the responsibility of state government for the local school systems both as to administration and finances." Martinez, 748 F.2d at 1394. Citing the New Mexico Constitutional provision that the State Board of Education "shall have control, management and direction . . . for all public schools," N.M. Const. art. XII, § 6, and relying on the statute setting out the State Board's

powers, we concluded that the state exercised pervasive control over local school

systems. Id. at 1394-95.[5]

We also observed that there was "a separate system of pervasive financial

control over all school districts." Id. at 1395. In reaching that conclusion, we

noted that under New Mexico law, the New Mexico Department of Finance and

Administration has complete budget-making authority over school district

budgets, that the Department must include, in school district budgets, a fund from

---

[5]N.M. Stat. Ann. § 22-2-2 includes among the state board's powers and duties the power to:

> B. determine policy for the operation of all public schools . . . in the state;
> . . .
> E. designate courses of instruction to be taught in all public schools in the state;
> . . .
> G. determine the qualifications for and issue a certificate to any person teaching . . . ;
> H. suspend or revoke a certificate held by a certified school instructor or certified school administrator, according to law, for incompetency, immorality or for any other good and just cause;
> . . .
> J. prescribe courses of instruction, requirements for graduation and standards for all public schools . . . ;
> K. adopt regulations for the administration of all public schools . . . ;
> . . .
> W. provide for management and other necessary personnel to operate any public school or school district that has failed to meet requirements of law, state board standards or state board regulations.

which to satisfy civil rights judgments, and that, at that time, approximately 96% of school funds statewide were provided by the state.  Id.  We thus concluded:

> Considering that the New Mexico State Board of Education has the "control," the "management" and "direction" of all public schools; that this authority has been implemented by the legislature in detail; that the fiscal-budgetary matters for the districts are fully controlled by the state; that the state taxing method for schools is a statewide system of state taxes; that the funds so generated for the schools are applied on a formula to equalize funding among the districts and basically on school attendance, we must hold that the local boards are indeed arms of the state system of education as provided in the state constitution.

Id. at 1396.

## B.  Daddow Decision

In Daddow, the New Mexico Supreme Court specifically disagreed with our analysis in Martinez, concluding "that the Tenth Circuit decision is erroneous." Daddow, 898 P.2d at 1238.[6]  It began by observing that the Martinez decision erroneously relied upon the broad language of N.M. Const. art. XII, § 6, and that

---

[6]The defendants in this case attempt to minimize the relevance of Daddow to this case, asserting that the Daddow court's analysis was directed to determining whether a local school board is a "person" for purposes of suit in state court under § 1983, and not to whether such school boards are entitled to Eleventh Amendment immunity in federal court.  While that is true, the New Mexico Supreme Court in Daddow took "guidance" from the Eleventh Amendment immunity analysis in Mount Healthy.  Moreover, the court made it abundantly clear that it was analyzing the question of whether a local school board was or was not an "arm of the state" under Mount Healthy, which is, in fact, the analysis necessary to determine whether an entity is entitled to Eleventh Amendment immunity.  See Daddow, 898 P.2d at 1239-43.

the section "is not self-executing," but rather, the State Board's powers are limited to the powers provided by statute, and the New Mexico Legislature has "given local boards exclusive power over employment and discharge of school employees." Daddow, 898 P.2d at 1240.

The Daddow court further held that Martinez "did not consider all of the Mt. Healthy factors." Id. at 1241. With respect to the first factor--how the entity is characterized under state law--the New Mexico Supreme Court concluded that a local school board is a "local public body" under N.M. Stat. Ann. § 41-4-3(C) (part of the New Mexico Tort Claims Act), and that it is not designated as a state educational institution under the New Mexico Constitution. Id.; see N.M. Const. art. XII, § 11. Thus, Daddow concluded that the first Mount Healthy factor clearly indicated that local school boards were not "arms of the state." Daddow, 898 P.2d at 1241.

With respect to the Mount Healthy factor directed at the control exercised by the state over the entity, the court in Daddow held that "[l]ocal school boards have significant political and financial autonomy." Id. The court cited N.M. Stat. Ann. §§ 22-5-4(G) and (K), providing, respectively, that local school boards may "contract, lease, purchase and sell for the school district," and that they may

-10-

"issue general obligation bonds of the school district." Id.[7]  The New Mexico

court held that "[t]he fact that our local school boards may issue bonds weighs

heavily in favor of their autonomy and against their characterization as 'arms of

the state.'"  Id.[8]

The court in Daddow explicitly criticized the Martinez court's conclusion

that the State Board of Education has pervasive financial control over the school

boards because of the State Board's involvement in budget-making:

> The [Martinez] court did not consider, however, that the local board
> determines priorities for spending and has discretion in spending
> funds generated under the Act as long as special needs programs are
> met.
>     Critically, we note that under Section 22-19-16, no obligation
> issued by a local school board may be charged against or become a
> debt of the state or any of its political subdivisions.

Id. at 1241-42 (citation omitted).

The Daddow court then considered the question of the source from which a

judgment against a school district or board would be satisfied.  The Martinez

court had concluded that such a judgment would be satisfied out of state funds

because state funds provided 96% of school district funds statewide and because

---

[7]N.M. Stat. Ann. § 22-5-4 lists numerous additional powers and duties of local school boards.

[8]The New Mexico Constitution prohibits school districts from issuing bonds except for capital improvements.  N.M. Const. art. IX, § 11; N.M. Stat. Ann. § 22-18-1. Additionally, no obligation incurred pursuant to the issuance of a bond "shall be a charge against or a debt of the state or any of its political subdivisions."  § 22-19-16(B).

Martinez interpreted particular state statutes to require school boards to include within their budgets an amount sufficient to cover such judgments. Daddow cited approvingly our statement in Ambus that "[t]he proper analysis focuses on whether the damage award would be paid directly by the state treasury, rather than indirectly through commingled state and local funds or state indemnification provisions." Id. at 1242 (quoting Ambus, 995 F.2d at 996). The New Mexico court then held, without further elaboration, that "Section 7 of Article VIII [of the New Mexico Constitution], Section 7-37-7(C)(3), and Section 41-4-20 show that, generally, school district liabilities are not paid directly from state funds." Id.[9]

_____

[9]N.M. Const. art. VIII, § 7 provides as follows:

> No execution shall issue upon judgment rendered against . . . any . . . school district or board of education; or against any officer of any . . . school district or board of education, upon any judgment recovered against him in his official capacity and for which the . . . school district or board of education[] is liable, but the same shall be paid out of the proceeds of a tax levy as other liabilities of . . . school districts or boards of education, and when so collected shall be paid by the county treasurer to the judgment creditor.

As we acknowledged in Martinez, however, that constitutional section is not self-executing. Martinez, 748 F.2d at 1395 (citing McAtee v. Gutierrez, 146 P.2d 315 (N.M. 1944)). The implementing statute is N.M. Stat. Ann. § 7-37-7(C)(3), which governs tax levies "necessary for the use of a governmental unit to pay a tort or workers' compensation judgment for which a . . . school district is liable."

Thus, section 7 of Article VIII of the New Mexico Constitution, as implemented by § 7-37-7(C)(3), authorizes school districts or boards to impose tax levies to pay for tort or workers' compensation judgments. The Martinez court concluded, however, that those

(continued...)

Thus, Daddow concluded that the Mount Healthy factor which examines the source of any money judgment against the school district or board suggested that New Mexico school boards were not arms of the state.  Id.

[9](...continued)
provisions did not permit school districts to raise taxes to pay for federal civil rights judgments, because "suits for violations of federal constitutional rights are not tort actions."  Martinez, 748 F.2d at 1396 (citing Wise v. Bravo, 666 F.2d 1328 (10th Cir. 1981)).  Daddow declined to decide whether § 7-37-7(C)(3) applies to judgments arising from constitutional violations.  Daddow, 898 P.2d at 1242.

The New Mexico Tort Claims Act, N.M. Stat. Ann. § 41-4-20(A)(1)(c), requires local public bodies to "purchase insurance, establish reserves or provide a combination of insurance and reserves or provide insurance in any other manner authorized by law" to satisfy liabilities arising under the Tort Claims Act.  Section 41-4-20(B) provides that "[t]he public school finance division of the department of finance and administration shall not approve the budget of any school district which has failed to budget sufficient revenues to insure or otherwise cover pursuant to this section every risk for which immunity has been waived . . . or liability imposed."  Daddow asserted, without explanation, that "Section 41-4-20 ensures that such liabilities [judgments arising from civil rights actions] will not be imposed upon the state treasury."  Daddow, 898 P.2d at 1242.  It cited in support of that proposition Judge McKay's partial dissent and partial concurrence in Garcia v. Board of Educ., 777 F.2d 1403, 1416 (10th Cir. 1985) (McKay, J., dissenting in part and concurring in part), in which Judge McKay explained why § 7-37-7(C)(3) (allowing school districts or boards to levy taxes to pay tort judgments) could be interpreted to apply to civil rights judgments, and also explained why a careful reading of the New Mexico statutes indicates that the Tort Claims Act's mandate that school boards budget for civil rights judgments does *not* include civil rights judgments obtained in federal court, but only civil rights judgments obtained in state courts.  Id.

As Ms. Duke asserts, New Mexico has by statute established a New Mexico Public School Insurance Authority, N.M. Stat. Ann. § 22-2-6.4, which assumes the responsibility for the defense and indemnification of a claim such as Ms. Duke's against a school board. §§ 22-2-6.1 to 22-2-6.10.  Premiums are paid by the school boards and are included in their budgets.  See LeDoux Aff. ¶ 4, Appellant's App. at 32.

Finally, Daddow examined whether local school boards operate like other political subdivisions. After observing that local school board members are elected by popular vote from district residents; that they may acquire and dispose of property and may sue and be sued; and that, while sales of school district property valued at more than $5000 must be approved by the state department of education, other local public bodies must obtain similar approval prior to selling property, the New Mexico court concluded that "[s]chool districts operate independently, like counties and municipalities." Id. at 1243.

### C. Our Standard of Review

Defendants argue that, because Eleventh Amendment immunity is a question of federal law, we should give no deference to Daddow, but should simply follow our Tenth Circuit authority in Martinez. We have acknowledged that the existence of Eleventh Amendment immunity is indeed a question of federal law. However, as the Supreme Court has noted, that question can only be answered "after considering the provisions of state law that define the agency's character." Doe, 117 S. Ct. at 904 n.5.

As the district court acknowledged, the conflict between Daddow and Martinez is clear and, thus, troublesome. While we must view the issue of Eleventh Amendment immunity as a federal question, we cannot ignore the fact

-14-

that the answer to the question requires a detailed analysis of New Mexico constitutional and statutory materials. And, "the State's highest court is the best authority on its own law." Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967).

We agree with the views recently expressed by the Fourth Circuit in an Eleventh Amendment case in which, as here, there was a state court decision on the status of the individual claiming Eleventh Amendment immunity, and to which one party argued the Fourth Circuit should defer. The court held that:

> [a]s a matter of federal law, a court may consider both the relevant state statutes, regulations, and constitutional provisions which characterize the entity, and the holdings of state courts on the question. A federal court may "give deference to the rationale used by a state court," but the holding is not dispositive as a matter of federal law.

Harter v. Vernon, 101 F.3d 334, 342 (4th Cir. 1996) (citations omitted) (quoting Ram Ditta v. Maryland Nat'l Capital Park & Planning Comm'n, 822 F.2d 456, 460 (4th Cir. 1987)), cert. denied, 117 S. Ct. 2511 (1997); see also Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth., 991 F.2d 935, 942 (1st Cir. 1993) ("While not dispositive, consistent decisions of a state's highest court construing an agency's or institution's relationship with the central government are important guideposts . . . ."). Accordingly, we will give some deference to Daddow's rationale, but do not regard it as dispositive of the issue before us. As Ms. Duke and the New Mexico Trial Lawyers Association, as amicus, urge, we

are more comfortable affording some deference to a state court decision on Eleventh Amendment immunity when that decision finds no immunity. See Miller-Davis Co. v. Illinois State Toll Highway Auth., 567 F.2d 323, 330 (7th Cir. 1977) ("Especially when a state supreme court does not extend immunity but, rather, holds that an entity is not to be deemed the state for purposes of sovereign immunity, we think the federal courts must pay careful attention to the state opinion.").

### D. Analysis

We conclude, after examining state statutes, the state constitution and state case law, that school districts and their governing boards in New Mexico are not arms of the state entitled to Eleventh Amendment immunity.

In analyzing the Eleventh Amendment issue, we first reiterate that, even after Hess and Doe, which emphasized the primacy of the impact on the state treasury as a factor in determining immunity, other factors remain relevant. Hess itself examined local versus state control, Hess, 513 U.S. at 44; the characterization and definition of the entity in its enabling and implementing legislation, id. at 44-45; state court interpretations and characterization of the entity, id. at 45; the functions of the entity, id.; the fiscal independence of the entity, id. at 45-46; and the legal liability of the state for the entity's debts, id. at

46. It is only "[w]hen indicators of immunity point in different directions[] [that] the Eleventh Amendment's twin reasons for being remain our prime guide." Id. at 47.[10]

### 1. **Control**

Martinez and Daddow each reached different conclusions on the issue of control of local school boards in New Mexico. After carefully examining the relevant statutory and constitutional materials, as well as the New Mexico Supreme Court's decision in Daddow, we agree with the New Mexico court that school boards have considerable local autonomy and control.

The New Mexico constitution empowers the State Board to "determine public school policy" and to "have control, management and direction, including financial direction, distribution of school funds and financial accounting for all public schools." N.M. Const. art. XII, § 6; see also N.M. Stat. Ann. § 22-2-1(A). By statute, the State Board has general authority over schools statewide, and authority, inter alia, to establish standards regarding curriculum, teacher accreditation and qualifications, and graduation requirements. As we acknowledged with respect to the Utah State Board of Education in Ambus,

_____

[10]Those "twin reasons" are the desire to protect the state treasury and to protect state sovereignty. See Hess, 513 U.S. at 52 (identifying "the States' solvency and dignity" as the concerns "underpin[ning] the Eleventh Amendment").

"[e]ach of these responsibilities relates to the management of the school system in the state as a whole." Ambus, 995 F.2d at 996.

Local school boards, however, have many other responsibilities and duties, which they perform without state control and supervision. For example, local board members are elected from residents of the district in which they live, N.M. Stat. Ann. § 22-5-1.1; subject to state board regulations, they "supervise and control all public schools within the school district and all property belonging to or in the possession of the school district," § 22-5-4(A); they approve or disapprove all employment decisions, § 22-5-4(D); they "contract, lease, purchase and sell for the school district," § 22-5-4(G); they "acquire and dispose of property," § 22-5-4(H); they "have the capacity to sue and be sued," § 22-5-4(I); they can "acquire property by eminent domain," § 22-5-4(J); and they can "issue general obligation bonds of the school district," § 22-5-4(K), although only for capital improvements. N.M. Const. art. IX, § 11; N.M. Stat. Ann. § 22-18-1. As with Utah school districts, "significant autonomy is vested in the local boards."

Ambus, 995 F.2d at 996.[11]  This factor therefore suggests such school boards should not receive Eleventh Amendment immunity.

### 2. **Designation Under State Law**

With respect to school districts' designation under state law, the New Mexico Constitution enumerates "State educational institutions," but local school districts are not among them.  "School district" is defined in the Public School Code as "an area of land established as a political subdivision of the state,"  N.M. Stat. Ann. § 22-1-2(K), of which the local board is its governing body.  § 22-1-2(L).  The Tort Claims Act defines a "local public body" as "all political subdivisions of the state and their agencies, instrumentalities and institutions."

---

[11]Martinez also concluded that the State Board had "complete" control over the budgets of each local school board.  Daddow did not read the statutory scheme to impose that degree of control, nor do we.

By statute, the State Department of Education shall "prescribe the forms for and supervise and control the preparation of all budgets of all public schools and school districts."  N.M. Stat. Ann. § 22-8-4.  The procedure is as follows:  "[E]ach local school board shall submit to the department an estimated budget for the school district for the ensuing fiscal year." § 22-8-6(A).  The State Department then "approve[s] and certif[ies] to each local school board a temporary operating budget for use by the local school board pending approval by the department of a final budget," and, at a later date, the department "approve[s] and certif[ies] to each local school board  . . . a final budget . . . based upon the estimated budget fixed by the local school board and the state superintendent." § 22-8-11(A)(1), (3) (emphasis added).  Thus, while the State Department has approval authority over budgets, the budgets appear to be prepared initially by the local boards.  Moreover, local boards have discretion to determine priorities for spending, "provided that the special program needs" are met.  § 22-8-18(B).

§ 41-4-3(C). It defines the "state" or "state agency" as "the state of New Mexico or any of its branches, agencies, departments, boards, instrumentalities or institutions." § 41-4-3(H). The section concerning notice of claims suggests that school districts are classified as local public bodies. It states as follows:

> Every person who claims damages from the <u>state or any local public body</u> under the Tort Claims Act shall cause to be presented to the <u>risk management division for claims against the state</u>, the mayor of the municipality for claims against the municipality, <u>the superintendent of the school district for claims against the school district</u>, the county clerk of a county for claims against the county, <u>or to the administrative head of any other local public body for claims against such local public body</u> . . . a written notice . . . .

N.M. Stat. Ann. § 41-4-16(A) (emphasis added) (citations omitted). The section in the Tort Claims Act addressing the establishment of a public liability fund defines a school district by reference to the Public School Code, § 22-1-2, which, as indicated, defines a school district as a political subdivision. Thus, while certainly not definitive, statutory definitions suggest the New Mexico legislature intended school districts or boards to be political subdivisions or local public bodies, not arms of the state. This factor therefore points away from Eleventh Amendment immunity for such entities.

### 3. State Court Interpretations

Daddow, as a detailed and lengthy analysis by the state's highest court, is entitled to some deference with respect to its conclusion that school boards are not arms of the state under New Mexico law. We recognize that the precise issue--Eleventh Amendment immunity for a local school board--was not the issue before the court in Daddow, as it involved a § 1983 action brought in state court. Nonetheless, the court's direct discussion of the Mount Healthy factors, its specific use of the Eleventh Amendment analysis for "guidance," and its direct and pointed criticism of Martinez make it relevant to our analysis. Thus, this factor also points away from Eleventh Amendment immunity.

### 4. Fiscal Independence of School Districts

As all parties agree, New Mexico school districts statewide receive an average of approximately 95% of their funds from the state. The Grady Municipal School district receives 98% of its funds from the state. Moreover, New Mexico has adopted an equalizing formula to fund its schools, pursuant to which each school district's total budget is calculated by a formula which considers a number of factors. The state provides funding for the budget in the amount by which the budget exceeds local and federal revenues, less five percent. N.M. Stat. Ann. § 22-8-25. As we have indicated, school districts or boards may

-21-

levy taxes to pay for tort or workers' compensation judgments, but not for federal civil rights judgments. School districts may issue bonds, but only for capital improvements. Thus, school districts receive virtually all their money from the state, and they appear to have no independent fundraising ability. This factor therefore points in favor of Eleventh Amendment immunity.

### 5. State Treasury Liability for Judgments

The final, but the most important, factor is whether the state treasury would be at risk of paying a judgment against a New Mexico school district or board, like defendant Grady Municipal Schools and its board. While the Supreme Court has indicated that this is the most "salient" factor, it is also among the most difficult to apply. This case, in particular, highlights the confusion in this area of Eleventh Amendment jurisprudence.

It appears that a civil rights judgment such as Ms. Duke's would be paid from the New Mexico Public Schools Insurance Authority or from a private insurance carrier.[12] Premiums for participation in the Authority come from the school districts' budgets, which, in turn, are funded almost exclusively by the

---

[12]All school districts in New Mexico are insured either through the Public School Insurance Authority or a private carrier. Judgments up to $250,000 are paid by the Authority, with any excess above that paid by a private carrier secured by the Authority. See LeDoux Aff. ¶ 4, Appellant's App. at 32.

state. According to the affidavit of the Executive Director of the Authority, Dr. Eugene LeDoux, premiums "are collected [from school districts] based on such factors as district size and claim history." LeDoux Aff. ¶ 4, Appellant's App. at 32. Thus, as a *practical* matter, because virtually all of the operating funds of a school district in New Mexico, including the premiums which purchase the insurance from which a judgment would be satisfied, come from the state, the state treasury pays, at least indirectly, for a judgment against a school district and its governing board. Some courts, following Hess but prior to Doe, held that could be sufficient to confer Eleventh Amendment immunity. See Mancuso v. New York State Thruway Auth., 86 F.3d 289, 296 (2d Cir.) ("[W]e must also ask whether a judgment against the Thruway Authority would have the practical effect of requiring payments from New York."), cert. denied, 117 S. Ct. 481 (1996); Hadley v. North Ark. Community Technical College, 76 F.3d 1437, 1441 (8th Cir. 1996) ("[E]ven if [the entity] could initially satisfy a judgment from other operating revenues, such as tuition payments or federal grants, the judgment would produce a higher operating budget shortfall that must, by state law, be satisfied by an appropriation from the state treasury."), cert. denied, 117 S. Ct. 1080 (1997); Ristow v. South Carolina Ports Auth., 58 F.3d 1051, 1054 (4th Cir. 1995) (holding that even if the state was not legally liable for a judgment against the Ports Authority, depletion of its resources would require the state to provide it

-23-

greater financial assistance).  As indicated, however, all those cases followed Hess but pre-dated Doe.

The question is whether that practical impact analysis satisfies the Supreme Court's test for when a state's treasury is vulnerable for Eleventh Amendment immunity purposes, as set out in Hess and Doe together.  In Hess, the Supreme Court asked whether either of the two states which had joined to create a bi-state entity were "legally and practically" obligated to satisfy a judgment against the entity.  Hess, 513 U.S. at 51.  In Doe, the Court appeared to give primacy to the legal liability of the state:  "'The question is not who pays in the end; it is who is legally obligated to pay the judgment that is being sought.'"  Doe, 117 S. Ct. at 903 (quoting Doe v. Lawrence Livermore Nat'l Lab., 65 F.3d 771, 777-78 (9th Cir. 1995) (Canby, J., dissenting), rev'd, 117 S. Ct. 900 (1997)).  We interpret Doe to require us to focus on legal liability for a judgment, rather than practical, or indirect, impact a judgment would have on a state's treasury.  As the Court specifically stated, "it is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant."  Id. at 904.  And while such a focus in some ways ignores economic reality, it also provides a clear and workable test in this very confused area of the law.  It directs courts away from having to make case-by-case fact-specific determinations of the practical impact on state treasuries.  In

-24-

this case, involving 98% state revenues, it may be relatively easy to determine the practical effect on the state treasury, but determining when the impact is sufficient as the percentage of state revenues declines becomes increasingly difficult.[13]

As applied to New Mexico's school districts and their boards, we must conclude that the factor relating to the liability of the state treasury points away from Eleventh Amendment immunity, for the simple reason that the state of New Mexico is not *legally* liable for a judgment against a school district. Because this most important factor suggests there should be no Eleventh Amendment immunity, and because most of the other relevant factors point the same way, we hold that school districts and their governing boards in New Mexico are not arms of the state, and they are accordingly not shielded by the Eleventh Amendment from liability for a § 1983 action in federal court. In so holding, we conclude that Martinez is no longer the law and is effectively overruled. We have polled the active judges on the court and they unanimously agree in this decision.

---

[13]Indeed, this partly explains some of the confusion in the case law. In Ambus, for example, we held that Utah school districts, which receive approximately 62% of their funds from the state, were not arms of the state. We held in Watson that the University of Utah Medical Center, which received only five percent of its funds from the state, was an arm of the state. In Belanger v. Madera Unified Sch. Dist., 963 F.2d 248 (9th Cir. 1992), the Ninth Circuit held that a school district which received 75% of its funding from the state was an arm of the state. In Mt. Healthy the Supreme Court held that the school district was not an arm of the state despite receiving "a significant amount of money from the State." Mt. Healthy, 429 U.S. at 573.

For the foregoing reasons, we REVERSE the judgment of the district court, and REMAND for further proceedings.