*OFFICE OF NAVAJO LABOR RELATIONS, ex rel. Jones*
Petitioner-Appellee

*vs.*

*CENTRAL CONSOLIDATED SCHOOL DISTRICT No. 22*
Respondent-Appellant[1]

In the Supreme Court of the Navajo Nation

No. SC-CV-13-98

June 5, 2002

[1] The appellant shows us no authority which establishes the status of the School District as a political subdivision of the State of New Mexico, or the nature of that status, so we must assume that the assertion is generally true.

Thomas J. Hynes, Esq., Hynes, Hale & Gurley, Farmington, New Mexico, for Appellant.

Levon Henry, Esq., Attorney General of the Navajo Nation, and Kimberly A. Rozak, Esq., Navajo Nation Department of Justice, Window Rock, Navajo Nation (Arizona) for Appellees.

Before YAZZIE, Chief Justice, and KING-BEN and MORRIS, Associate Justices.

Opinion delivered by KING-BEN, Associate Justice.

This is an appeal from a January 20, 1998 supplemental order of the Navajo Nation Labor Commission, awarding compensatory damages in the sum of $16,662.29 to Edith Jones, and an underlying May 22, 1997 order of the Commission as to liability under the Navajo Preference in Employment Act. The sole issue on appeal is whether the Navajo Nation Labor Commission lacked

jurisdiction over Central Consolidated School District No. 22 because of its status as a political subdivision of the State of New Mexico.

## I

Central Consolidated School District No. 22 is a New Mexico school district which operates in the Navajo Nation by virtue of a lease between the Navajo Tribe of Indians and the School District which permits it to manage one of several schools within the district. The particular school which is the subject of the lease is at Shiprock, Navajo Nation. Edith Jones, who brought an employment discharge complaint before the Navajo Nation Labor Commission, was employed as a bus driver at the school in Shiprock. Her driving assignments involved transporting children to and from school within the Navajo Nation.

The lease, which is dated December 21, 1983, was signed by Edward T. Begay as the Chairman of the Navajo Tribal Council,[2] and Rena M. Yazzie, president of the school district school board. The lease has a term of twenty-five years, with an option to renew for an additional twenty-five years, so the lease will be valid through at least the year 2033. There are two important lease terms which are relevant to our decision. The first, Section 15, has to do with the employment of Navajos, and it provides that:

> Lessee shall give preference in employment arising in connection with this lease to qualified, willing and available Navajos and other Indians living on or near the Navajo Reservation during the term of this lease, and in construction of any facilities thereon, to the extent provided by law.

The lease does not define the term "law." However, Section 16 of the lease, which we read in conjunction with the last provision, provides that:

> The Lessee and the Lessee's employees, agents, and sublesses and their employees and agents agree to abide by all laws, regulations, and ordinances of the Navajo Tribal Council now in force and effect or may be hereafter in force and effect as long as those laws, regulations, and ordinances do not conflict with state and federal law. This agreement to abide by Navajo laws shall not forfeit rights which the Lessee and the Lessee's employees, agents, and sublessees and their employees and agents enjoy under the Federal laws of the United States Government, nor shall it affect the rights and obligations of Lessee as an [sic] New Mexico public school district under applicable laws of the State of New Mexico.

The School District specifically agreed to give Navajo and Indian Preference in employment, and that is the subject matter of the Navajo Preference in Employment Act. It also specifically agreed to abide by Navajo Nation law to the extent it does not conflict with state or federal law. The parties do not contend that this situation falls within that exception, and there is no dispute that the

2 He acted on the Chairman's behalf.

School District had the authority to execute the lease which subjected it to Navajo Nation law by specific consent. That law the School District agreed to abide by includes the jurisdiction of the Navajo Nation and the Navajo Nation Labor Commission.

## II

The parties cite broad propositions of law in support of their case. First, the School District contends that the Eleventh Amendment prevents the Navajo Nation from suing the school as the school is an arm of the state. However, the Eleventh Amendment only restricts cases that are filed in federal courts. This is apparent in the text of the Amendment and stated clearly in case law. The text of the Eleventh Amendment provides, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State." U.S.C.A. Const. Amend. 11. As interpreted by the U.S. Supreme Court in *Ford Motor Co.*, "[t]his express constitutional limitation denies *to the federal courts* authority to entertain a suit brought by private parties against a state without its consent." *Ford Motor Co. v. Dept. of Treasury of State of Indiana*, 323 U.S. 459, 464, 65 S. Ct. 347, 351 (1945) (emphasis added). The Appellant does not cite any case purporting to extend the Eleventh Amendment to protect states from suit in tribal court.

Second, even if we were to stretch the meaning of federal courts to include the tribal courts of the various Indian nations, the school district would still not be protected by the Eleventh Amendment. The Tenth Circuit has overruled a prior case to make clear that school districts in New Mexico are not considered "arms of the state," and are therefore not included in the protections afforded to states by the Eleventh Amendment. *Duke v. Grady Municipal Schools*, 127 F.3d 972 (10th Cir. 1997). That court considered the degree of local control of school districts, the designation given them under state law, their fiscal independence, and the state treasury liability for judgments. *Duke*, 127 F.3d 972, 978-981. The Court of Appeals emphasized the fact that because legal liability of local school districts does not transfer to the state, state immunity is not appropriate. *Duke*, 127 F.3d at 981. The 10th Circuit also gave substantial weight to a decision of the New Mexico Supreme Court on the same issue because although the characterization of school districts for Eleventh Amendment purposes is a federal question, it requires interpretation of state law in this case against the interest of the state's school districts. *Duke*, 127 F.3d at 978, citing *Daddow v. Carlsbad Municipal School District*, 120 N.M. 97, 898 P .2d 1235 (1995).

Third, Central Consolidated cites *Blatchford v. Native Village of Noatak*, 501 U.S. 775 (1991), for the principle that the Eleventh Amendment of the United States Constitution prohibits suits by Indian nations against states. However, as the Office of Navajo Labor Relations pointed out, that holding is limited to the situation where an Alaska Native Village brought suit in federal court, and

the suit was dismissed on the narrow ground of the specific provisions of the Eleventh Amendment.[3]

The School District also cites *State of Montana v. Gilham*, now reported at 133 F. 2d 1133 (9th Cir. 1998), for the proposition that a state cannot be sued in tribal court. It urges us to consider that if an Indian nation cannot be sued in state court, then a state or its instrumentalities cannot be sued in an Indian nation court. However, *Gilham* does not bind this Court, as it was a tort action and not a consent-regulatory case. The action was based upon the driver of a vehicle hitting a state road sign, and it is a jurisdiction-by-consent case. It also dismisses the arguments made by the Navajo Nation, based on *Nevada v. Hall*, 440 U.S. 410 (1979) (holding that the California courts were not barred from hearing a tort suit against the state of Nevada by sovereign immunity, the Eleventh Amendment, or the full faith and credit clause). Another case the School District also cites is *State of Montana v. King*, now reported at 191 F. 3d 1108 (9th Cir. 1999), to stand for the proposition that a state cannot be sued in an Indian nation tribunal. That case was clearly based upon a "highway loss of control -no consent" situation, which does not apply here, since the School District gave its specific consent to be subject to Navajo Nation law.

Moreover, current analysis has moved beyond its prior focus on intergovernmental immunity. As for the arguments about bilateral relations, deference to other sovereigns, mutuality, reciprocity, and comity, the New Mexico Supreme Court ruled that Indian nations and their entities can be sued in the New Mexico court system when doing business outside the Indian nation, but not when an action arises within Indian country. Compare *Padilla v. Pueblo of Acoma*, 107 N.M. 174,754 P. 2d 845 (1988) (an Acoma Pueblo construction company, owned by the Pueblo, could be sued for off-reservation activities) with *Defeo v. Ski Apache Resort*, 120 N.M. 640, 904 P. 2d 1065 (N.M. App. 1995) (no jurisdiction over an Indian nation where the personal injury took place within Indian country). Principles of reciprocity, comity and bilateral relations would prompt us to rule that we will treat the State of New Mexico and its instrumentalities the same way it treats Indian nations and their instrumentalities.

This case is factually distinct from the preceding cases because here, the act complained of is clearly subject to the Navajo Nation Preference in Employment Act. The act complained of arose within the Navajo Nation, the injured party is a Navajo, and the School District had a lease with the Navajo Nation and conducted its operations within the Navajo Nation when the act complained of occurred. Neither the parties nor the record advise us of what other arrangements, other than the lease, link the School District and the Navajo Nation more specifically.

3 It provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Native Village of Noatuk was a "citizen" of Alaska when it sued in the federal district court there.

Intergovernmental immunity theories are *passé*, and given recent litigation on the question of whether state officials can be sued in an Indian nation court for on-reservation activities, it appears that strict sovereign immunity theories have also fallen by the wayside. The most recent and relevant decision of the United States Supreme Court on point is *Nevada v. Hicks*, 121 S. Ct. 2304 (June 25, 2001). That is a case where Nevada game wardens obtained both state and tribal search warrants for searches of a home of a member of the Fallon Paiute-Shoshone Tribes on Indian trust land within the reservation. *Id.*, 121 S. Ct. at 2308. Surprisingly, the Supreme Court did not use the theory of state sovereign immunity from suit in an Indian nation court to dispose of the appeal. Instead, the Court (per Justice Scalia) ruled that state law enforcement officials have the authority to enter a reservation to execute state process for the commission of an alleged crime outside of Indian country, so they cannot be sued for tortious conduct arising from an illegal search. The Court also ruled that Indian nation courts are not "courts of general jurisdiction," and that accordingly, they cannot entertain suits under the United States Civil Rights Act of 1871, 42 U.S.C. § 1983.[4] The Court reaffirmed the application of the Montana rule that Indian nations have jurisdiction over non-Indians under certain circumstances, *id.* 121 S. Ct. at 2308, and the Court responded to concerns expressed by Justice O'Connor in a concurring opinion by acknowledging state-Indian agreements such as the one here. More specifically, the court comment that "[w]hether contractual relations between State and tribe can expressly or impliedly confer tribal regulatory jurisdiction over nonmembers – and whether such conferral can be effective to confer adjudicative jurisdiction as well – are questions that may arise in another case, but not at issue here." *Id.* 121 S. Ct. at 2317. The Court continued: "[w]e do not say state officers cannot be regulated; we say they cannot be regulated in the performance of their law-enforcement duties." *Id.* (emphasis supplied). Shortly prior to this decision, in a case involving the Navajo Nation, the Court reaffirmed the regulatory and adjudicatory powers of the Navajo Nation over non-Indians where there are "consensual relationships with the tribe or its members, ... commercial dealings, contracts, leases, or other arrangements." *Atkinson Trading Company v. Shirley*, 532 U.S. 645, 651 (2001) (internal quotation marks omitted and emphasis supplied).

Here, there is a lease and the parties have not advised us of what other contracts, commercial dealings, or "other arrangements" there may happen to be between the School District and the Navajo Nation. We note, for example, that there are "Navajo Educational Policies" which apply to all schools within the Navajo Nation, and to which the School District agreed in its lease. 10 N.N.C. §§ 101–127 (1995) (reiterating Navajo and Indian preference at 10 N.N.C. § 108).

4 We have the authority to use any "applicable" law of the United States, which would include 42 U.S.C. § 1983. The source of our authority is court statutes originally approved by the Secretary of the Interior, and that approval binds the United States. *See Navajo Tribe v. Udall*, 306 F. 2d 819 (C.A.D.C. 1962), *cert. den.* 372 U.S. 908.

We regret that the parties have brought a factually incomplete case to us, and since jurisdiction by "consent" under the Montana-Strate-Atkinson trilogy is highly fact based, the Navajo Nation must provide a complete factual record in jurisdiction appeals. It is not the job of this Court to delve through the appellate record for the facts. If we have the responsibility to uphold Navajo Nation jurisdiction to the fullest extent permitted by the Treaty of 1868 and the inherent powers of the Navajo Nation, it is up to the Nation's attorneys to fully advise the Court of all jurisdictional facts.

Considering the foregoing, the orders of the Navajo Nation Labor Commission are hereby AFFIRMED. The Office of Navajo Labor Relations is hereby given leave to move the Court for a remand to the Navajo Nation Labor Commission for a factual determination of jurisdictional facts on the record, and this decision shall not be final for the purposes of the exhaustion of Navajo Nation remedies for a period of ten days from the date of this opinion to permit such a motion, or until such time as such a determination is made. Both parties shall have the leave of Court to move for a rehearing of this decision based upon any determination of the full jurisdictional facts of the case.