303 F.3d 1137
 Derrick EASON; Serena Eason, Plaintiffs-Appellants,
v.
CLARK COUNTY SCHOOL DISTRICT; Robert T. Henry; Mila Kitt; Beverly J. Minnear, Defendants-Appellees.
Derrick Eason; Serena Eason, Plaintiffs-Appellants,
v.
Clark County School District; Robert T. Henry; Mila Kitt; Beverly J. Minnear, Defendants-Appellees.
Shawn Witte, a Minor, by his next friend and Parent, Teresa Witte, Plaintiff-Appellant, and
Teresa Witte, Plaintiff,
v.
Clark County School District; Robert T. Henry; Macke Woodard; Beverly J. Minnear, Defendants-Appellees.
Shawn Witte, a Minor, by his next friend and Parent, Teresa Witte, Plaintiff-Appellant, and
Teresa Witte, Plaintiff,
v.
Clark County School District; Robert T. Henry; Macke Woodard; Beverly J. Minnear, Defendants-Appellees.
 No. 00-17370.
 No. 00-17377.
 No. 01-15692.
 No. 01-15749.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted February 11, 2002.
 Filed September 11, 2002.
 
 Barbara E. Buckley (argued) and Sara V. Winter, Clark County Legal Services Program, Inc., Las Vegas, NV, for the plaintiffs-appellants.
 Rick D. Roskelley, Hicks & Walt, Las Vegas, NV, for the defendants-appellees.
 Andrew J. Kahn, McCracken, Stemerman, Bowen & Holsberry, Las Vegas, NV, for the amicus curiae Las Vegas Interfaith Council for Worker Justice.
 Appeal from the United States District Court for the District of Nevada; Roger L. Hunt, District Judge, Presiding. D.C. Nos. CV-97-01608-RLH, CV-97-01608-RLH(LR1), CV-98-00368-RLH and CV-98-00368-RLH/LRL.
 Before: REINHARDT and FISHER, Circuit Judges, and MOLLOY, District Judge.*
 FISHER, Circuit Judge:
 
 
 1
 Shawn Witte and Derrick Eason appeal the dismissal of their actions alleging severe abuse and excessive corporal punishment inflicted by educators at Variety School, a public school attended exclusively by students with disabilities, in Nevada's Clark County School District ("District"). Shawn and Derrick both sued the District and individual District personnel for violations of their constitutional rights to substantive due process and equal protection under § 1983, the Rehabilitation Act, the Americans with Disabilities Act and state law. In both cases, the district court held that all defendants were entitled to Eleventh Amendment immunity, dismissed all claims and taxed costs against Shawn and Derrick. We reverse the dismissal of the § 1983 and state law claims against all defendants, as well as the ADA and Rehabilitation Act claims against the District, because the Clark County School District is not an "arm of the state" and therefore does not enjoy Eleventh Amendment immunity. Plaintiffs do not appeal the dismissal of the ADA and Rehabilitation Act claims against the individual defendants.
 
 FACTUAL & PROCEDURAL BACKGROUND
 
 Witte v. Clark County School District
 
 
 2
 Shawn Witte, who is about 13 years old, has been diagnosed with Tourette syndrome, asthma, attention deficit hyperactivity disorder and emotional problems. For about three years, he attended Variety School, a public school in Nevada's Clark County School District attended exclusively by students with disabilities. He alleges that he "suffered repeated physical, psychological and verbal abuse at the hands of District personnel pursuant to policies either approved by the District or ratified by the District's failure to take action." The alleged severe pattern of abuse included the following: Shawn was force fed oatmeal, to which he is allergic, as well as oatmeal mixed in with his own vomit; he was strangled so he would run faster despite a physical deformity in his feet and legs; he was often subjected to the painful "take down procedure," in which he was pinned to the ground, his arms and legs forcibly crossed behind him, while a teacher applied pressure to his buttocks or spine; he was forced to run at high speeds on a treadmill with weights tied to his ankles; his food was thrown away if he did not use utensils properly; and he was squirted with water if unable to stay on task for long periods of time.
 
 
 3
 On March 2, 1998, Shawn, by his next friend and parent, Teresa Witte, sued the Clark County School District; Robert T. Henry, Director of Program Development in the District; Beverly J. Minnear, principal of Variety School, and Woodard Macke, a classroom teacher at Variety School, for violations of his constitutional rights to substantive due process and equal protection under 42 U.S.C. § 1983; § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; Title II of the Americans with Disabilities Act, 42 U.S.C. § 1231 et seq. and state law.
 
 
 4
 The district court dismissed all claims against all defendants on the ground that defendants were immune from suit in federal court under the Eleventh Amendment and subsequently awarded costs of $6,879.87 to defendants.[1] Shawn timely appealed both orders.
 
 
 Eason v. Clark County School District
 
 
 5
 Derrick Eason, who is about 12 years old, has been diagnosed with autism, cognitive impairment and attention deficit hyperactivity disorder. He attended Variety School from 1992, when he was three, to August 1997. Like Shawn, Derrick alleges that he suffered severe abuse at the hands of Variety School and District personnel, including being subjected to the "take down" procedure, being sprayed in the face with refrigerated water, being forced to run or walk on the treadmill with weights on his ankles or around a table continuously, having the teacher scream degrading comments at him, having numbing or noxious solutions applied to his mouth and lips to prevent him from biting himself and having vinegar put in his food.
 
 
 6
 Derrick, by his next friend and parent, Serena Eason, also sued the District, Henry, Minnear and Mila Kitt, Derrick's teacher during the 1995-96 and 1996-97 school years. The district court dismissed all claims against all defendants on the basis of Eleventh Amendment immunity and later awarded costs of $8,484.62 to defendants. Derrick timely appealed both orders.
 
 STANDARD OF REVIEW
 
 7
 We review de novo the district court's Rule 12(b)(6) dismissal, "accepting as true all well-pleaded allegations of fact in the complaint and construing them in the light most favorable to the plaintiffs." Zimmerman v. City of Oakland, 255 F.3d 734, 737 (9th Cir.2001). "We review de novo the issue of whether a party is immune from suit under the Eleventh Amendment." Sofamor Danek Group v. Brown, 124 F.3d 1179, 1183 n. 2 (9th Cir. 1997).
 
 ANALYSIS
 
 I.
 
 The Eleventh Amendment states:
 
 8
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 
 
 9
 U.S. Const. amend. XI. The amendment has been construed to bar suits by citizens against their own states, Papasan v. Allain, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); Pennhurst v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Hans v. Louisiana, 134 U.S. 1, 18, 10 S.Ct. 504, 33 L.Ed. 842 (1890), and "[i]t has long been settled that the reference to actions `against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agencies and state instrumentalities." Regents of the Univ. of Calif. v. Doe, 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997) (citations omitted) (holding that California state university enjoys Eleventh Amendment immunity). In contrast, the Eleventh Amendment does not extend to counties and municipal corporations. Lincoln County v. Luning, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890) (holding that Nevada counties are not immune under the Eleventh Amendment); see also Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 401, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) ("But the Court has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a `slice of state power.'"). Cf. Moor v. County of Alameda, 411 U.S. 693, 717-719, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) (holding that California counties are not arms of the state or alter egos of the state for purposes of diversity jurisdiction), overruled in part by Monell v. Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (overruling holding of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that local governments are immune from suit under § 1983).
 
 
 10
 The central question in this case is whether the Clark County School District is an "arm of the state," entitled to Eleventh Amendment immunity. Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The Supreme Court has mentioned in passing that the Eleventh Amendment does not afford "local school boards" immunity from suit, Missouri v. Jenkins, 495 U.S. 33, n. 20, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990), and in Mt. Healthy, the Court held an Ohio school district subject to suit because it was "more like a county or city than ... like an arm of the State." Id. at 280, 97 S.Ct. 568. Moreover, most courts have held that school districts are not entitled to Eleventh Amendment immunity.[2]
 
 
 11
 In Mitchell v. Los Angeles, 861 F.2d 198 (9th Cir.1989), we articulated five factors to determine whether an agency is an arm of the state: (1) "whether a money judgment would be satisfied out of state funds," (2) "whether the entity performs central governmental functions," (3) "whether the entity may sue or be sued," (4) "whether the entity has the power to take property in its own name or only the name of the state" and (5) "the corporate status of the entity." Id. at 201. We consider each of these factors in turn.
 
 
 12
 The first Mitchell factor — whether a money judgment will be satisfied out of state funds — is the most important. See e.g., Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Belanger v. Madera Unified School Dist., 963 F.2d 248, 251 (9th Cir.1992); Durning v. Citibank, N.A., 950 F.2d 1419, 1424 (9th Cir.1991); Jackson v. Hayakawa, 682 F.2d 1344 (9th Cir.1982). The Supreme Court stressed in Regents of the University of California that "it is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant." 519 U.S. at 431, 117 S.Ct. 900(finding irrelevant the fact that the federal government would indemnify the State of California for any damages judgment against the University); see also Durning, 950 F.2d at 1424 n.2 ("The relevant question is whether the state would have a legal liability to pay the judgment, not whether the defendant entity would have the practical ability to pay it."); Duke, 127 F.3d at 981 (concluding that the "factor relating to the liability of the state treasury points away from Eleventh Amendment immunity, for the simple reason that the state of New Mexico is not legally liable for a judgment against a school district[,]" even though New Mexico schools receive about 95% of their funds from the state). Thus, the relevant inquiry is whether Nevada will be legally required to satisfy any monetary judgment obtained against the District.
 
 
 13
 No statutory provision requires Nevada to satisfy its school districts' debts, but defendants cite Belanger, where we granted California school districts Eleventh Amendment immunity, and contend that, as in California, state funds will necessarily satisfy any monetary judgment against the school district. In Belanger, however, we recognized that "California has selected a different path from that of most states." 963 F.2d at 254. Belanger is thus distinguishable because Nevada does not share the unique structure of the California school system. In California:
 
 
 14
 The state sets a revenue limit for each school district based on average attendance, subtracts property tax revenues from that limit, and allocates the balance to the school district from the state school fund. In short, the state determines the amount of money that school districts may spend per pupil and then provides the necessary state funds.
 
 
 15
 Id. at 252 (citations omitted). By virtue of this revenue limit system, "state and local revenue is commingled in a single fund under state control, and local tax revenue lost to a judgment must be supplanted by the interchangeable state funds already in the district budget." Id. Thus, in California, "any use of the commingled funds is a use of state funds." Id.
 
 
 16
 In contrast, even though Nevada school districts receive state funding, local funds lost to satisfy a money judgment will not necessarily be replaced with state funds. The State of Nevada does not set a maximum limit on per pupil spending. Instead, it establishes a minimum amount to be spent per pupil — known as the basic support guarantee — and it uses state funds to guarantee that each district will have that minimum amount. This funding scheme is entitled "The Nevada Plan." See "The Nevada Plan for School Finance: An Overview" at 2, 4 (hereinafter "Nevada Plan Overview");[3] Nev.Rev.Stat. §§ 387.121 (defining generally The Nevada Plan); 387.122 ("Establishment of basic support guarantees"); 387.1233 ("Calculation of basic support"). The amount of money contributed by the state varies by school district — school districts are required to earmark certain locally generated revenue to the minimum budget, this locally generated revenue is subtracted from the state guaranteed basic support and the difference (if there is any) is provided by the state. Nevada Plan Overview at 3 and Appendix B; Nev.Rev.Stat. §§ 387.121; 387.1235(Identifying local funds in The Nevada Plan); 373.010 et seq. (Local School Support Tax Law); 387.195 (describing local property tax); 387.030(describing state distributive account). Moreover, school districts generate local revenue beyond the amount allocated to the guaranteed basic support. Nevada Plan Overview at Appendix B. This additional local revenue is considered to be "`outside' the Nevada Plan formula." Nevada Plan Overview at 3. When these local revenues exceed or fall short of estimates, state aid does not decrease or increase. Id. Because the state guarantees only a minimum amount of per pupil spending, not a maximum, and because school districts may generate funds in addition to those provided by the state, it is not necessarily true that an amount withdrawn from a school district's account in order to pay a judgment will be replaced with state money.
 
 
 17
 Defendants make much of the fact that the State of Nevada limits school districts' ability to raise local revenue. The local funds "inside" the Nevada Plan consist of 25 cents of the 75 cent property tax earmarked for school operations and a 2.25 percent sales tax known as the Local School Support Tax. Nevada Plan Overview at 3 and Appendix B; Nev.Rev.Stat. §§ 387.1235 ("Local funds available for public schools"); § 374.010 et seq. ("Local School Support Tax Law"). The local funds "outside" the Nevada Plan include the remaining 50 cents of the 75 cent property tax, a portion of the motor vehicle privilege tax, franchise taxes, interest income, tuition and rent. Nevada Plan Overview at 3. Defendants correctly point out that these local sources of revenue are predetermined by state law and that "school districts have very little discretion in tax revenues." Nevada Plan Overview at 6. That the State of Nevada controls how local revenue is generated, however, is not relevant for purposes of the first Mitchell factor. Defendants cannot demonstrate that the State of Nevada bears a legal obligation to satisfy any adverse judgment against the District. Nor can they demonstrate that any money withdrawn from the District's account to satisfy such a judgment will necessarily be replaced with state funds, as in California.
 
 
 18
 The second Mitchell factor, "whether the entity performs central governmental functions," also distinguishes Nevada from California. Mitchell, 861 F.2d at 201. On balance, Nevada does not "treat[] public schooling as a state-wide or central governmental function." Belanger, 963 F.2d at 253. The State of Nevada created the school system and agreed to provide for its support, Nev. Const. Art. 11, §§ 2 and 6, and the county school districts are "political subdivision[s] ... whose purpose is to administer the state system of public education." Nev.Rev.Stat. § 386.010. Nonetheless, the legislature has expressly "reaffirm[ed] its intent that public education in the State of Nevada is essentially a matter for local control by local school districts." Nev.Rev.Stat. § 385.005 ("Declaration of legislative intent"). Defendants cannot point to any authority supporting the proposition that Nevada school districts are "treated as state agencies under [Nevada] law" or that "[Nevada] law is well settled that providing public education is a state function." Compare Belanger, 963 F.2d at 253("[T]hrough the state constitution, statutes, and supreme court decisions, California has made public schooling a state governmental function."). Rather, local school districts possess "such rights and powers as are necessary to maintain control of education of the children within their respective districts." Nev.Rev.Stat. § 385.005; see also Nev.Rev.Stat. § 386.350(defining general powers of board of trustees of school district).
 
 
 19
 Third, each county school district has "the power to sue and may be sued." Nev. Rev.Stat. § 386.010(3). The third Mitchell factor thus weighs slightly against holding that the District is an arm of the state. Belanger, 963 F.2d at 254 (holding that third Mitchell factor "is entitled to less weight than the first two factors").
 
 
 20
 Fourth, the District is not required to take property only in the name of the State of Nevada. The board of trustees, which runs the school district and the schools within that district, Nev.Rev.Stat. § 386.350, holds, manages and controls school district property. Nev.Rev.Stat. §§ 393.010; 393.030. The board of trustees has custody of the schoolhouses, and it may insure "the schoolhouses, furniture and school apparatus." Nev.Rev.Stat. § 393.020. Further, the board may sell, rent or lease real property belonging to the school district when it is "necessary or for the best interests of the school district," Nev.Rev.Stat. § 393.220. This factor also distinguishes Nevada from California, where property held in the name of a school district was nonetheless treated as "state property rather than local government property." Belanger, 963 F.2d at 254.
 
 
 21
 Finally, even though the school district itself is not a corporation, each board of trustees is a corporation. Nev.Rev.Stat. § 386.110. Accordingly, this factor weighs against granting the District Eleventh Amendment immunity. Once again, Belanger is distinguishable. There, we held that California "school districts have the corporate status of agents of the state for purposes of school administration." Belanger, 963 F.2d at 254. As we have discussed in addressing the other four Mitchell factors, there is no basis in Nevada law to so conclude here.
 
 
 22
 In sum, after examining the nature of school districts in Nevada and inquiring into Nevada's treatment of school districts, we conclude that the Mitchell factors weigh against a finding that the District is an arm of the state, entitled to Eleventh Amendment immunity. Most importantly, Nevada is not legally required to satisfy any judgment against the District. It is also not true that state funds will necessarily satisfy any such adverse judgment. In addition, the District does not perform a "central governmental function." Instead, Nevada has delegated responsibility for the state system of education to local units. Moreover, the District may sue and be sued and its board of trustees holds its property. Finally, even though the district itself is not a corporation, the board of trustees is. Consequently, the District is more like a local or county agency than like a state agency. Mt. Healthy, 429 U.S. at 280-81, 97 S.Ct. 568.
 
 
 II.
 
 
 23
 Defendants contend that, even if the District does not enjoy Eleventh Amendment immunity, the individual defendants may not be held liable under either the ADA or the Rehabilitation Act. See, e.g., Vinson v. Thomas, 288 F.3d 1145, 1155-56 (9th Cir.2002); Garcia v. S.U.N.Y. Health Sciences Center, 280 F.3d 98 (2d Cir.2001), ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."). We decline to address the issue here, as plaintiffs do not appeal the dismissal of their ADA and Rehabilitation Act claims against the individual defendants. Of course, plaintiffs' § 1983 and state law claims against the individual defendants — in both their official and individual capacities — survive, insofar as they do not "vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act." Vinson, 288 F.3d at 1156.
 
 
 III.
 
 
 24
 Because we reverse the district court's entry of judgments in both cases in favor of defendants, we also reverse the costs awards. Amarel v. Connell, 102 F.3d 1494, 1523 (9th Cir.1997). Even though we do not reverse the district court's dismissal of plaintiffs' ADA and Rehabilitation Act claims against the individual defendants, the district court on remand should await the resolution of plaintiffs' remaining claims before deciding whether an award of costs is appropriate. Id.
 
 CONCLUSION
 
 25
 The district court erroneously concluded that the Clark County School District is an arm of the state, entitled to Eleventh Amendment immunity. We therefore reverse the dismissal of plaintiffs' § 1983 and state law claims against all defendants, as well as the dismissal of plaintiffs' ADA and Rehabilitation Act claims against the District. We do not reverse the district court's dismissal of plaintiffs' ADA and Rehabilitation Act claims against the individual defendants. Finally, because we reverse the entry of judgments in favor of defendants in both cases, we also reverse the costs awards.
 
 
 26
 REVERSED.
 
 
 
 Notes:
 
 
 *
 The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 The district court had previously dismissed the complaint, but we reversed inWitte v. Clark County School Dist., 197 F.3d 1271 (9th Cir.1999).
 
 
 [2]
 See, e.g., Cuesta v. School Board of Miami-Dade County, 285 F.3d 962, 966 (11th Cir.2002) (Florida); Cash v. Granville County Bd. of Educ., 242 F.3d 219 (4th Cir.2001) (North Carolina); Duke v. Grady Municipal Schools, 127 F.3d 972 (10th Cir.1997) (New Mexico); Ambus v. Granite Bd. of Educ., 995 F.2d 992 (10th Cir.1993) (Utah); Stewart v. Baldwin County Bd. of Educ., 908 F.2d 1499, 1509-11 (11th Cir.1990) (Alabama); Lester H. v. Gilhool, 916 F.2d 865, 870-71 (3d Cir.1990) (Pennsylvania); Rosa R. v. Connelly, 889 F.2d 435, 437-38 (2d Cir.1989) (Connecticut); Lopez v. Houston Independent School Dist., 817 F.2d 351, 353 (5th Cir.1987) (citing Kingsville Independent School Dist. v. Cooper, 611 F.2d 1109, 1112 (5th Cir.1980)), overruled on another ground by Walton v. Alexander, 44 F.3d 1297 (5th Cir.1995); Fay v. South Colonie Central School Dist., 802 F.2d 21, 27 (2d Cir.1986) (New York); Minton v. St. Bernard School Bd., 803 F.2d 129, 131-32 (5th Cir.1986) (Louisiana); Gary A. v. New Trier High School Dist. No. 203, 796 F.2d 940, 945 (7th Cir.1986) (Illinois); Stoddard v. School Dist. No. 1, Lincoln County, 590 F.2d 829 (10th Cir.1979) (Wyoming); Unified School Dist. No. 480 v. Epperson, 583 F.2d 1118, 1121-23 (10th Cir.1978) (Kansas); Adams v. Rankin County Bd. of Educ., 524 F.2d 928, 929 (5th Cir.1975) (Mississippi). But see Belanger v. Madera Unified School Dist., 963 F.2d 248 (9th Cir.1992) (California); De Levay v. Richmond County School Bd., 284 F.2d 340 (4th Cir.1960) (Virginia).
 
 
 [3]
 Defendants object to the plaintiffs' introduction of this document, a report prepared by the Legislative Counsel Bureau, a Nevada state agency, for the first time on appeal. The case they cite,Sablan v. Dept. of Finance, 856 F.2d 1317 (9th Cir.1988), is inapposite because it merely reiterates the familiar proposition that we will not entertain new arguments on appeal. Id. at 1327. By bringing the Nevada Plan Overview to our attention, plaintiffs do not attempt to craft a new legal argument. Rather, they seek to bolster their description of the Nevada school system by introducing a supporting administrative report. We fail to see how this is improper — defendants do not suggest that this document is an unofficial record or otherwise inaccurate. In any event, we do not use the Nevada Plan Overview to resolve any disputed issues of fact.