**GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, a New York corporation, Plaintiff,**

v.

**JACKSON COUNTY SCHOOL DISTRICT NO. 9, Eagle Point, an Oregon municipal corporation, Defendant.**

**Jackson County School District No. 9, Eagle Point, Plaintiff,**

v.

**Great American Insurance Company of New York, a New York corporation, Defendant.**

**Civil Nos. 06–3035–CL, 06–3042–CL.**

United States District Court, D. Oregon.

March 12, 2007.

---

Francis J. Maloney, III, Bullivant Houser Bailey, PC, Portland, OR, for Jackson County School District No. 9, Eagle Point.

David B. Paradis, Dominic M. Campanella, Brophy Mills Schmor Gerking Brophy & Paradis LLP, Medford, OR, for Great American Insurance Company of New York.

## OPINION AND ORDER

PANNER, District Judge.

### Background

The parties are Great American Insurance Company of New York ("Great American") and Jackson County School District No. 9, Eagle Point (the "School District"). In August 2002, the Eagle Point Junior High School was damaged by fire. Great American had furnished the fire insurance policy. The School District, working in close coordination with Great American, spent several years designing and obtaining approval for a replacement school building, to be of like kind and quality. Great American hired its own expert to study the design and ensure the replacement building would meet that standard. As part of this process, the School District demolished the old school building to make way for the replacement building, and allegedly spent over seven hundred thousand dollars on design, permitting, and other costs. After three years of working together on this process, Great American and the School District reached an impasse.

Great American brought an action in federal court on May 25, 2006, seeking declaratory relief against the School District. The following day, the School District filed an action in state court against Great American, for breach of contract and declaratory relief. Great American removed the state case to federal court. The cases were then consolidated.

Great American moved for summary judgment, arguing that any claim by the School District is barred by the following provision in the insurance contract:

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss of damage occurred.

The School District asserted, in response, that Great American's conduct and representations estopped the company from enforcing the two year clause. The School District also filed a cross-motion for summary judgment, which asserted that:

A. the Court lacks subject matter jurisdiction over these actions;

B. the two-year time limitation does not apply to governmental entities; and

C. the two-year time limitation does not apply to replacement cost claims.

On February 8, 2007, Magistrate Judge Cooney filed his Findings and Recommendation (docket # 33), which recommended that both motions for summary judgment

be denied. The matter is now before me on de novo review pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b).

### Discussion

*Subject Matter Jurisdiction*

The School District contends this court lacks subject matter jurisdiction. To avoid wasting the valuable time of all concerned, the School District should immediately have raised this issue by motion when these consolidated cases first arrived in federal court, and not waited until the summary judgment briefing. Nevertheless, because a true defect in subject matter jurisdiction may not be waived, *see Hill v. Blind Industries and Services of Maryland,* 179 F.3d 754, 760 (9th Cir.1999), *amended,* 201 F.3d 1186 (2000), I will consider the School District's tardy arguments.

■ Great American's Complaint stated two grounds for subject matter jurisdiction. First, Great American cited the Declaratory Judgment Act, 28 U.S.C. § 2201. "However, the Declaratory Judgment Act ... does not create subject matter jurisdiction where none otherwise exists. It only creates a particular kind of remedy available in actions where the district court already has jurisdiction to entertain a suit." *Jarrett v. Resor,* 426 F.2d 213, 216 (9th Cir.1970).

Great American also cites the diversity jurisdiction statute, 28 U.S.C. § 1332(a), which provides, in relevant part, that:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
> (1) citizens of different States * * * *

The amount in controversy exceeds $75,000, and Great American is not a "citizen" of Oregon. The only issue, then, is whether the School District is a "citizen" of Oregon.

■ A State is not a "citizen" of itself for purposes of diversity jurisdiction. *Moor v. County of Alameda,* 411 U.S. 693, 717, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). Thus, if the State of Oregon is the "real and substantial party in interest" in these actions, then diversity jurisdiction is lacking. *State ex rel. Roberts v. Mushroom King, Inc.,* 77 B.R. 813, 816 (D.Or.1987).

■ Conversely, "a political subdivision of a State ... is a citizen of the State for diversity purposes," unless that political subdivision "is simply 'the arm or alter ego of the State[.]' " *Moor,* 411 U.S. at 717, 93 S.Ct. 1785. This "arm or alter ego" exception is a narrow one. *Cf. id.* at 718–21, 93 S.Ct. 1785 (a county is a "citizen of the State for diversity purposes"); *University of Rhode Island v. A.W. Chesterton Co.,* 2 F.3d 1200, 1202–03 (1st Cir.1993).

The Magistrate Judge's Report analyzed, at length, the School District's contention that it is merely an arm or alter ego of the state, but concluded the District's argument was unpersuasive. I agree, though my analysis differs on one small point. The Report focuses on the facts and circumstances of this particular case, such as the precise relief sought in the Complaint, and the specific activity the School District engaged in that gave rise to the claims in question.

It is not clear, from the caselaw, whether the focus should be so narrowly constrained, or whether the court must consider the broader picture. Most cases examining whether an entity is an arm or alter ego of the State—including all six cases cited by the Magistrate Judge—do so in the context of the Eleventh Amendment. However, as Judge Kilkenny observed in *DeLong Corp. v. Oregon State Highway Commission,* 233 F.Supp. 7, 10 (D.Or.1964), "we must keep in mind that diversity jurisdiction, in the last analysis, presents a problem which is separate and

distinct from the immunity of the state under the Eleventh Amendment." *See also Ramada Inns, Inc. v. Rosemount Memorial Park Ass'n,* 598 F.2d 1303, 1309 (3d Cir.1979) (Seitz, C.J., concurring) (noting "the divergent principles underlying the two inquiries").

The Eleventh Amendment is best viewed as a personal privilege rather than a true limitation upon the court's subject matter jurisdiction, *Hill,* 179 F.3d at 760, and it may be waived as to one action or claim but vigorously asserted as to another action or claim. Whether citizenship is so flexible a creature is a different matter.

Given this uncertainty, in addition to the analysis conducted by the Magistrate Judge, I also have evaluated the parties' arguments from a wider perspective. For instance, I have considered the full range of activities engaged in by the School District, not just new school construction, and also looked beyond the limited remedy sought in this particular case.

Under either standard, *i.e.,* narrow or broad perspective, I am satisfied that the State of Oregon is not the real party in interest here. The Magistrate Judge correctly concluded that the School District is not the arm or alter ego of the State of Oregon for purposes of 28 U.S.C. § 1332(1). Consequently, the School District is a citizen of Oregon, and this court has diversity jurisdiction over these consolidated actions.

### Estoppel

■■■ Great American contends any action against it is barred by the limitations period in the policy. The School District responds, *inter alia,* that Great American's conduct and representations estop the company from enforcing that contractual provision.

Great American's brief errs in its statement of the elements of estoppel, offering a definition that parallels the elements of common law fraud. Though some cases have incorrectly used that definition, the better reasoned cases hold otherwise. *See IKON Office Solutions, Inc. v. American Office Products, Inc.,* 178 F.Supp.2d 1154, 1164 (D.Or.2001). "It is not necessary to the existence of an equitable estoppel that there should exist a design to deceive or defraud, but it is sufficient if the person against whom estoppel is asserted by his silence or representation has created a belief of the existence of a state of facts which it would be unconscionable to deny." *Id.,* (quoting *Hess v. Seeger,* 55 Or.App. 746, 762, 641 P.2d 23 (1982)). The doctrine of equitable estoppel thereby prevents a person "from taking an inequitable advantage of a predicament in which his own conduct has placed his adversary." *IKON,* 178 F.Supp.2d at 1164 (quoting Prosser & Keeton *on Torts,* § 105 (5th ed.)). The School District's arguments might also be construed as asserting that Great American has waived the two year limitation.

The statute and caselaw cited by Great American notwithstanding, the Magistrate Judge correctly concluded that there remain disputed material facts or inferences that must be resolved by the trier of fact. This precludes granting summary judgment for either party on this question.[1] The Magistrate Judge did not reach the other arguments asserted by the School District, nor do I.

### Conclusion

The court adopts the Recommendation (# 33) by Magistrate Judge Cooney, as modified above. The cross-motions for summary judgment (# 7 and # 13) are denied. The clerk shall schedule a telephone

---

1. A few sentences in the Report could be read as suggesting the court actually made certain factual findings. This inartful wording would not mislead the experienced attorneys representing the parties, who are intimately familiar with summary judgment proceedings.

conference for the purpose of setting a prompt trial date.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

COONEY, United States Magistrate Judge:

Plaintiff, Great American Insurance Company (Great American), seeks declaratory judgment regarding the rights and obligations as to fire claims filed by Defendant Jackson County School District No. 9 (School District). The School District filed an action in state court for breach of contract arising out of the same fire claims. (Companion Case 06–3042–CO—Notice of Removal). Great American removed the action to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. These actions were consolidated. (Docket # 5).

Before the court are plaintiff's motion for summary judgment (# 7) and defendant's motion for summary judgment (# 13).

## I.

### FACTS

Great American sold the School District an insurance contract, policy number PAC 7–29–19–02–10 (the Policy), providing property insurance for the Eagle Point Junior High School for the period of July 1, 2002 through July 1, 2003. (Plaintiff's # 9 Exhibit A at 1). John Batt was plaintiff's local agent. (# 16 Lecuyer Aff. at ¶ 5).

The Policy states:

In return for payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

(# 9 Plaintiff's Exhibit A at 1). The Policy also states that:

### D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

(*Id.* at 3).

In August 2002, the Eagle Point Junior High School was damaged by fire. (# 1 Plaintiff's Complaint at ¶ 5). Great American paid the School District $5,202,091.73, representing the actual cash value of the school buildings damaged by the fire. (*Id.* at ¶ 11).

After a number of community meetings, the School District decided to replace the junior high building with a grade school. (# 16 Lecuyer Aff. ¶ 6). Mr. Batt advised the School District that it could replace the junior high building with a grade school of like kind and quality across the street and that the replacement cost coverage under the policy would pay this cost. (*Id.*).

On October 24, 2003, in a telephone conference with Eileen Mandell, Great American's Specialty Claims Adjuster, regarding the School District's claim, Ms. Mandell represented and confirmed to the School District that Great American would pay the replacement cost for a grade school building of like kind and quality to be built across the street from the junior high building. (*Id.* at ¶ 7). The parties further agreed that the School District would retain an architect to draw plans for the new building and obtain cost estimates and submit those to the insurance company. (*Id.*). The parties intended that Great American would then retain its own expert to confirm that the new building was of like kind and quality to the junior high. (*Id.*).

During this conference call, the School District asked Ms. Mandell whether there were any time limits for completing this process. Ms. Mandell stated that as long

as the School District maintained open communications with Great American and the parties were making continuous forward progress, Great American would impose no time restrictions on the School District's claim for replacement cost. (*Id.* at ¶ 7).

On January 14, 2004, Greg Lecuyer attended a School Board meeting at which the School District's replacement cost claim was again discussed. (*Id.* at ¶ 8). During that meeting, Mr. Batt was present and advised the School District again that there were no time limits with respect to its claim. (*Id.*)

The School District relied on the oral and written representations of Ms. Mandell and Mr. Batt to conclude that Great American would pay the replacement cost of a new grade school building of like kind and quality and that Great American would not enforce any time limits, including statute of limitations on potential lawsuits that could arise out of the School District's insurance claim, on the School District's claim. (*Id.* at ¶¶ 9–15, Exhibits 3, 4, 5, and 6; # 28 Lecuyer Supp. Aff. at ¶ 2). The parties agreed that, because the School District could not, as a public entity, enter into a contract to build the new grade school without actually having the money to pay for it, that they would agree in advance as to how much Great American would pay for the replacement building. (# 16 Lecuyer Aff. at ¶ 7).

Based upon these representations and agreements, the School District retained an architect and other consultants to design the replacement building, provide a cost estimate, and move forward on zoning and site plan approval. (*Id.* at ¶ 9 and 14). In addition, based upon said representations and agreements, in September 2004, the School District demolished the Glenn D. Hale Elementary School to make room for the new grade school. (*Id.* at ¶ 11).

Great American knew as early as March of 2004 that the School District intended to demolish the old grade school to make way for the new building. (*Id.* at ¶ 10 and Exhibit 3). The School District would not have demolished that school had Great American not made the above described representations and agreements. (*Id.* at ¶ 11).

On November 10, 2004, Mr. Batt sent a letter to the School District stating that Great American had obtained an estimate of $7,292,000 for the cost of replacing the damaged junior high school building at the original site and that these monies could be used to construct the grade school building across the street. (*Id.* at ¶ 12 and Exhibit 4). This letter was consistent with the prior representations and agreements Great American had made with and to the School District. (*Id.* at ¶ 12). However, this estimate did not include soft costs and code upgrade costs. (*Id.*).

During 2005, the parties met on several occasions to review the School District's design and estimate for the new grade school. (*Id.* at ¶ 13). In a meeting on February 24, 2005, the parties discussed some of the conditions of the former and new proposed school sites, which included new building and fire code requirements that were adopted after the junior high was built and that would be applicable to the grade school. (*Id.*). Great American retained Woods Restoration as its consultant to review the School District's design and estimate. (*Id.* at ¶ 13 and Exhibit 5).

On April 11, 2005, Ms. Mandell sent a letter to the School District wherein she reaffirmed that Great American was obligated to pay the replacement cost for a new building. (*Id.* at ¶ 15 and Exhibit 6). She advised that Great American's consultant would prepare an estimate that would include soft costs and code upgrade costs. (*Id.*).

On June 9, 2005, the parties and their construction consultants met to compare estimates and ask questions of each other to make sure that they each had an understanding of the like kind and quality of the junior high building versus the like kind and quality of the proposed grade school. (*Id.* at ¶ 16). Ultimately, the parties could not agree on a replacement cost and these lawsuits followed. (*Id.*).

Between October 24, 2003, when Ms. Mandell first stated there would be no time restrictions and the filing of the lawsuit in May of 2006, the School District, in reliance on Great American's representations and agreements, spent approximately $722,906 toward building a new grade school of like kind and quality across the street. (*Id.* at ¶ 17). These costs covered zoning and site plan approval for the new building and soft costs for designs and plans. In addition, the School District demolished a standing grade school, at a cost of $124,472, to make way for the new school. (*Id.*).

On May 26, 2006, the School District filed a civil action in state court against Great American. (Notice of Removal). Great American removed the action to federal court. (*Id.*).

To provide funding for public K–12 education, the State of Oregon sets a per student maximum cost for each school district based on the number of students, subtracts local property tax revenues from that limit, and allocates the balance to the school district from the state school fund. (# 16 Lecuyer Aff. at ¶ 2). Based on this formula, the School District receives 70% of its annual operating funds from the state general fund and 30% from local property tax. (*Id.*).

## II.

### LEGAL STANDARDS

A moving party is entitled to summary judgment as a matter of law "if the plead-ings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact...." Fed.R.Civ.P. 56(c); *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir.2002). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir.2002).

The moving party must carry the initial burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact. *Id.; Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.2001) (en banc). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir.1995). All reasonable inferences are drawn in favor of the non-movant. *Gibson v. County of Washoe*, 290 F.3d 1175, 1180 (9th Cir. 2002), *cert. denied*, 537 U.S. 1106, 123 S.Ct. 872, 154 L.Ed.2d 775 (2003).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir.1995); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 & n. 4, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party presents evidence which, taken by itself, would establish the right to a directed verdict at trial, the motion for summary judgment must be granted, in the absence of any significant probative evidence tending to support the opposing party's theory of the case. *THI–Hawaii,*

*Inc. v. First Commerce Fin. Corp.*, 627 F.2d 991, 993–94 (9th Cir.1980); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076.

In addition to the requirements of Fed. R.Civ.P. 56(e), parties must also comply with the requirements set forth in Local Rule 56.1. Local Rule 56.1(b) provides in relevant part that:

> (2) After responding to the movant's numbered paragraphs, the responding party may then articulate other relevant material facts which are at issue, or are otherwise necessary for the court to determine the motion for summary judgment.

Local Rule 56.1(d) sets forth the requirements for a party's concise statement of facts, and requires a citation to particular evidence supporting a party's statement or denial of a material fact. Local Rule 56.1(e) provides in part that "the court has no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."

When a party relies on deposition testimony or other evidence, that party must designate specific facts in the deposition or document which support that there is a genuine issue for trial. *See Nissho–Iwai American Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir.1988). The court is not required to search the record to determine whether any factual disputes exists, and an opposing party's failure to designate and reference triable facts, in light of the requirements of Fed.R.Civ.P. 56(e), Local

Rule 56.1, and governing precedent, may be fatal to the opposition. *See Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C.Cir.1988).

## III.

### *DISCUSSION*

Plaintiff moves for summary judgment arguing that Defendant's claims and counter-claims are time-barred by the two-year suit limitation provision in the Policy. In response and support of its motion for summary judgment, Defendant argues that: 1) the court lacks subject matter jurisdiction over this case because Defendant is a state agency and not a citizen for purposes of diversity jurisdiction; 2) the two-year limitation does not apply to governmental entities; 3) the two-year limitation does not apply to claims involving replacement coverage; and 4) Plaintiff is barred by estoppel from imposing the two-year limitation period.

#### Subject Matter Jurisdiction

28 U.S.C. § 1332(a)(1) provides that: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States." The party invoking jurisdiction bears the burden of establishing jurisdiction. *See Lew v. Moss*, 797 F.2d 747, 749 (9th Cir.1986).

A state is not a "citizen" for purposes of diversity jurisdiction. *Illinois v. City of Milwaukee, Wis.*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972). In addition, a state agency or political subdivision is also not a "citizen" for purposes of diversity jurisdiction if it is "an arm of the state" or an "alter ego" of the state. *Gardner v. Mastec North America, Inc.*, 2005 WL 3244351, *2 (D.Or.).

■ To determine whether an agency is an "arm of the state", the following factors must be examined:

1) whether the judgment would be satisfied out of state funds;

2) whether the entity performs central government functions;

3) whether the entity can sue or be sued;

4) whether the entity has the power to take property in its own name or only in the state's name; and

5) the corporate status of the entity.

*Mitchell v. Los Angeles*, 861 F.2d 198, 201 (9th Cir.1989) (the "Mitchell Factors"). The most important factor is whether a judgment would impact the state treasury. *Alaska Cargo Transport, Inc. v. Alaska Railroad Corp.*, 5 F.3d 378, 380 (9th Cir. 1993).

■ When determining these factors the court looks to the way state law treats the entity. *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

The Ninth Circuit has addressed the issue of whether a school district was an "arm of the state" or "alter ego" of the state in four cases; *Belanger v. Madera Unified School District*, 963 F.2d 248 (9th Cir.1992), *Eason v. Clark County School District*, 303 F.3d 1137 (9th Cir.2002), *Holz v. Nenana City Public School District*, 347 F.3d 1176 (9th Cir.2003), and *Savage v. Glendale Union High School*, 343 F.3d 1036 (9th Cir.2003), *cert. denied* 541 U.S. 1009, 124 S.Ct. 2067, 158 L.Ed.2d 618 (2004).

In *Belanger*, the Ninth Circuit applied the Mitchell Factors and found that the school district was a state agency, because a judgment against the school district would be satisfied out of state funds, and under California law, the school district was a state agency that performed central governmental functions. *Belanger*, 963 F.2d at 251.

In *Eason*, the Ninth Circuit found that a Nevada school district was not an "arm of the state". *Eason*, 303 F.3d at 1139. The Ninth Circuit noted that a majority of courts have held that school districts are not entitled to Eleventh Amendment immunity. *Id.* at 1141 n. 2. The court distinguished *Belanger* because Nevada did not share the unique structure of the California school system, and "local funds lost to satisfy a money judgment will not necessarily be replaced with state funds". *Id.* at 1142.

In *Holz*, the Ninth Circuit determined that a school district in Alaska was not an "arm of the state" or a state agency as the state was not legally required to satisfy any possible judgment against the school district. *Holz*, 347 F.3d at 1177. In applying the Mitchell Factors, the court found that the Alaska school system more closely resembled the Nevada school system, rather than the California school system, and, therefore, it was not an arm of the state. *Id.* at 1181.

In *Savage*, the Ninth Circuit found that a school district in Arizona was not an arm of the state as the funds which would be used to pay a money judgment would not be paid with money out of the state treasury. *Savage*, 343 F.3d at 1044. In applying the Mitchell Factors, the court compared the Arizona school system with both the Nevada and California school systems, found that the Arizona' school districts more closely resembled Nevada's than California's, and found that all five factors indicated that Arizona schools are not agents of the state. *Id.* at 1051.

In each of the Ninth Circuit cases cited above, the plaintiffs were claiming, among other things, that their civil rights had been violated and that they were entitled to monetary compensation from the school district. None of the cases dealt with the funding of new school buildings.

## A. *Declaratory Relief*

Great American seeks a declaratory judgment determining the rights and obligations of the parties as to the fire claims under the policy, and its "costs and disbursements". (# 1 Case No. 06–3035). The School District seeks an award of damages for the replacement cost of the school, a declaratory judgment as to the amount of the replacement costs, and attorney's fees, court costs and prevailing party fees. (# 1 Case No. 06–3042).

*First Mitchell Factor: Whether Any Judgment Would be Satisfied Out of State Funds*

School District asserts that Oregon has adopted a school funding system which is similar to California's and any judgment must necessarily be paid from state funds.

Great American asserts that no money judgment is sought, just a declaration of value of loss, and the state will not incur legal liability for the outcome of the case.

In Great American's action for declaratory relief, there is no request for money damages. The most Great American could expect from its declaratory relief action is an award of costs. In addition, Great American has not cross-claimed for money damages in the School District's action. (# 4 Case No. 06–3042). As Great American could conceivably be awarded costs, the issue is whether the state will be legally liable for any costs awarded.

Despite the fact the State of Oregon sets a per student maximum cost for each school district based on the number of students, the funding for new school buildings remains the responsibility of the local school district. (# 29 Campanella Aff. at ¶ 2; # 27 Defendant's Reply, Ex. 1, p. 3).

The School District has a right to bring an action for condemnation of real property required for school purposes and acquire title in fee simple. ORS § 332.182. The School District may sell all property of the district which in the judgment of the board is not required for school purposes. ORS § 332.155(5). The School District also may purchase real property on a contractual basis if the time for payment does not exceed 30 years. ORS § 332.155(9). And the School District may contract a bonded indebtedness to construct a school building, and use the proceeds to pay for the costs incurred in authorizing, issuing, carrying or repaying the bonds. ORS § 328.205(1) & (3).

In *Martin v. City of Tigard*, 335 Or. 444, 72 P.3d 619 (2003), the court held that:

> [T]he city's attorney fees and litigation costs from the condemnation proceeding constituted actual costs that the city incurred in "designing, constructing and financing the project."

*Id.* at 628.

Here, the School District asserts it is entitled to the insurance proceeds. The School District is the named insured on the Policy. The costs associated with the recovery of insurance proceeds from the Policy should come from the insurance proceeds as part of financing the construction of a new school building.

Finally, the School District, not the state, is legally liable for the repayment of bonds issued to fund new school buildings.[1]

---

1. See, ORS § 328.346. Upon a school district's failure to make payments on bonded indebtedness guaranteed by the state for which the state has made payment, the State Treasurer is not only directed to recover from the school district all such payments but may intercept any payments from the General Fund, the State ·School Fund, the income of the Common School Fund and any other source of operating moneys provided by the state to the school district to reimburse the state.

The court finds that with respect to the funding of new school buildings including the insurance proceeds, the School District is not acting as an agent of the State of Oregon, and that the state would not be legally liable for any award of costs.[2]

*Second Mitchell Factor: Whether the Entity Performs Central Government Functions*

In assessing this factor, the issue is to what extent the state exercises governmental control over the [funding of new school buildings]. *Savage*, 343 F.3d at 1044.

School District asserts that the public schooling in Oregon is a central government function because (1) the Oregon Constitution requires that the legislature provide for the establishment of a uniform, and general system of Common schools, (2) the legislature created the State Board of Education to establish policy for the administration and operation of all public schools, (3) The legislature also created the Department of Education to carry out all administrative functions of the State Board of Education, (4) the Oregon Constitution authorized the legislature to provide for the election of a state school superintendent, (5) the state superintendent acts as the administrative officer of the State Board of Education and as Executive head of the Department of Education, (6) the state superintendent assists all school boards in following school laws, the rules of the State Board of Education and the ministerial duties of school officers and teachers, (7) school districts can establish local rules but the rules must be consistent with the rules of the State Board of Education, and (8) school districts may only adopt textbooks and courses of study from lists approved by the state.

However the issue here is not whether funding public schooling in Oregon is a central government function, but rather whether the funding for new school buildings is a central government function. In Oregon, funding for new school buildings remains the responsibility of the local school districts.

Given the substantial degree of autonomy given local school districts under Oregon law with respect to funding new school buildings, the court finds that the School District is not performing a central governmental function.

*Third Mitchell Factor—Whether the Entity Can Sue or be Sued*

School districts have the power "to sue or be sued". ORS § 332.072.

The court finds that this factor weighs slightly against finding immunity as it is not given as much weight as the first two factors. *Eason*, 303 F.3d at 1144.

*Fourth Mitchell Factor—Whether the Entity has the Power to Take Property in its own Name or Only in the State's Name*

School District has a right to bring an action for condemnation of real property required for school purposes and to acquire title in fee simple. ORS § 332.182. School District may sell all property of the district which in the judgment of the board is not required for school purposes. ORS § 332.155(5). School District also may purchase real property on a contractual basis if the time for payment does not exceed 30 years. ORS § 332.155(9).

Here, there is nothing in the record to indicate that School Board sought or obtained permission from the State of Oregon to retain an architect and other consultants to design the replacement

---

2. As the basis for any claim against the School District in this case is related to the recovery of insurance proceeds to build a new school, the court does not have to decide the issue of whether the School District or state funds would be used to pay a monetary judgment against the School District.

building, to demolish the old elementary school to make room for the new school, or to obtain zoning and plan approval.

In Oregon, a school district has ownership and control over the real property in its district. This factor distinguishes Oregon from California, where under California law property held in the name of a school district is treated as state property. *Belanger,* 963 F.2d at 254.

This factor weighs in favor of precluding immunity.

*Fifth Mitchell Factor—The Corporate Status of the Entity*

ORS § 332.072 states:

All school districts are bodies corporate, and the district school board is authorized to transact all business coming within the jurisdiction of the district and to sue and be sued. Pursuant to law, district school boards have control of the district schools, and are responsible for educating children residing in the district.

ORS § 332.072.

The court finds that this factor weights slightly in favor of precluding immunity.

Having given due consideration to all five of the Mitchell Factors, the court finds that the School District is not an arm of the state with respect to the funding of new school buildings.

Defendant's motion for summary judgment on this issue should be denied.

**Limitations Under Contract**

Great American asserts that School District's action is barred by the two year contractual limitation in the Policy.

School District responds, among other things, that Great American should be estopped from asserting the School District is barred by the contractual limitation.

*Estoppel*

■ The parties agree that the elements of estoppel are:

(1) a false representation; (2) made with the knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it.

*Herman v. Valley Ins. Co,* 145 Or.App. 124, 134, 928 P.2d 985 (1996).

■ Here, Great American told School District on more than one occasion that it would not impose any time limits on School District's claim. (# 16 Lecuyer Aff. at ¶¶ 9–15, Exhibits 3, 4, 5, and 6; # 28 Lecuyer Supp. Aff. at ¶ 2).

Great American has stated in this action:

Great American still puts no time limits on Eagle Point's insurance claim and is committed to paying that claim in full (even if it is beyond the $6,736,658.73 it has already paid) when the replacement cost valuation dispute is resolved.

(# 23 Reply, p. 16, fn. 2).

Great American attempts to split hairs when it admits that it placed no time limits on School District's "insurance claim" but denies that this meant Great American was affirmatively induced School District to "delay its lawsuit". (# 23 Reply, p. 16). In support of its position, Great American directs the court to a letter written on April 5, 2005 in which Great American purports to expressly reserve its rights under the policy. (# 19 Exhibits, Ex. 6, p. 2). The April 5, 2005 letter was written over eight months after Great American asserts the contractual limitation expired on August 29, 2004.

Great American also argues that the fact that they investigated and negotiated the claimed loss is not enough to invoke the doctrine of estoppel citing ORS § 742.056.

The court finds that Great American did much more than investigate and negotiate School District's claim, it made affirmative representations to School District, it paid School District a portion of its claim, and it caused School District to change it position by expending moneys in preparation of building a new school and in anticipation of receiving the replacement cost.

Based upon the evidence presented, the court finds that there is a genuine issue of fact regarding whether the representations by Great American misled School District and whether School District reasonably relied on those representations.

Having found that there is a genuine issue of fact regarding whether estoppel applies, it is not necessary for the court to consider the other defenses raised by School District to Great American's contractual limitations argument.

Great American's motion for summary judgment should be denied.

## IV. *RECOMMENDATION*

Based upon the foregoing, it is recommended that Plaintiff's motion for summary judgment (# 7) be denied, and that Defendant's motion for summary judgment (# 13) be denied.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten days within which to file a response to the objections.* Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

Feb. 8, 2007.